**In re James C. HALAS, Debtor.**

**No. 95 B 10592.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 2, 2000.
As Amended June 2, 2000.

Tom Vaughn, Chicago, IL, trustee.

Joseph Wrobel, Chicago, IL, for Debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PENDING MOTIONS:

JACK B. SCHMETTERER,
Bankruptcy Judge.

1. *Motion for Sanctions under 11 U.S.C. § 362(h)*

2. *Platek Motion to Dismiss Debtor's Bankruptcy Petition*

3. *Motion of Ebert and France to Dismiss Debtor's Bankruptcy Petition*

### FINDINGS OF FACT

#### Background

This bankruptcy case was filed by Debtor James C. Halas ("Halas") under Chapter 13 of the Bankruptcy Code. Halas moved under 11 U.S.C. § 362(h) for sanctions against David Platek ("Platek"), Regan D. Ebert ("Ebert") and Robert France ("France") for assertedly willful violations of the "automatic stay" in bankruptcy. Following an evidentiary hearing herein, Findings of Fact and Conclusions of Law were originally made orally from the bench essentially finding that Ebert had not willfully violated 11 U.S.C. § 362 so as to implicate § 362(h). However, the other respondents were found to be protected by res judicata or collateral estoppel implications of a state court ruling on sanctions in that court, it being concluded that state courts have concurrent jurisdiction over assertion of rights under § 362(h). A District Court Judge on appeal later ruled in this case that jurisdiction to pass on violations of § 362(h) lies exclusively before a bankruptcy judge, and so reversed and remanded for further hearing herein pursuant to that ruling.

This bankruptcy case was then reopened to permit the further hearing, and Debtor's original motion for sanctions under § 362(h) was reinstated. New briefs were written and filed on all pending issues except that decided by the District Judge. Respondents Platek, Ebert, and France also filed motions to dismiss the Halas bankruptcy case, arguing that Halas was disqualified from filing this bankruptcy case and therefore they could not properly be held to have willfully violated § 362(h) since that provision can apply only to a proper bankruptcy case. Those motions were all briefed. All parties through their counsel waived any right or intent to offer further evidence, and all rested on the original trial record and their briefs.

*The Motions of Platek, Ebert and France to Dismiss the Bankruptcy and find Halas Barred from Filing a § 362(h) Motion*

 Platek, Ebert, and France argue that Halas had no legal right to file this bankruptcy case because of the history leading to dismissal of his earlier bankruptcy case filed under Chapter 13 of the Bankruptcy Code, and therefore he cannot pursue his § 362(h) sanction motion.

Halas' first bankruptcy case, 95–B–00770, was filed on January 17, 1995. On March 4, 1995, the Chapter 13 trustee moved to dismiss that case because Mr. Halas had twice failed to appear at scheduled creditor meetings, and failed to make plan payments. By order of April 25, 1995, that case was dismissed for lack of payment and also for unreasonable delay under 11 U.S.C. § 1307(c)(1). On May 25, 1995, Halas filed this case as his second bankruptcy petition, which was later dismissed April 9, 1996, but reopened on Halas' motion to consider his request for § 362(h) sanctions.

Movants seeking to close the bankruptcy case again argue that the dismissal order of the first Halas bankruptcy case on April 25, 1995 disqualified Halas under 11 U.S.C. § 109(g) from filing a new bankruptcy case for 180 days after that dismissal. Under

§ 109(g) no one may be a bankruptcy debtor for 180 days after an earlier bankruptcy

> ... (1) ... case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper presentation of the case ...

The earlier dismissal under 11 U.S.C. § 1307(c)(1) was for one of the possible causes specified by statute, namely for

> ... (1) unreasonable delay by the debtor that is prejudicial to creditors, ...

The failure of Halas to make payments and attend creditor meetings in the earlier case could well have been "willful" for all we know, and if so could have barred him from refiling for 180 days. However, no finding of willfulness was made at the time, and no evidence of willfulness in the earlier case was offered by Platek, Ebert, or France.

■ Willful failure to pay from available funds and to attend creditor meetings that one is available to attend could certainly be grounds for dismissal of a Chapter 13 case, and might support a finding of willfulness under § 109(g), but under the wording of § 1307(c)(1) a finding of willfulness is by no means necessary to order dismissal. Unexcused failure to pay due to lack of funds or anticipated funds that fail to materialize, and repeated failure to attend creditor meetings even if due only to carelessness, illness, or confusion, would each be enough to warrant dismissal under § 1307(c)(1) for "unreasonable delay." Dismissal under that provision neither requires willfulness nor implies that willfulness has been found. Therefore, without more, such dismissal does not automatically trigger the 180 day bar against refiling under § 109(g).

Since no evidence of willfulness in the earlier case was presented or found, the motion to dismiss this bankruptcy case under § 109(g) must be denied.

### The Halas § 362(h) Motion

All parties through their counsel were asked in open court whether they wanted to offer evidence to supplement that admitted in the original hearing under § 362(h). Through their counsel in open court, all waived their right to do so and elected to stand on the prior evidentiary record. Accordingly, the Findings of Fact herein rest on the record of hearings held and evidence taken May 14, June 4, and June 8, 1998 before the earlier ruling was entered.

### James Halas

Mr. Halas is the debtor in this case and a defendant in a state court action in which Mr. France is the plaintiff. The underlying lawsuit in the state court action was filed by France alleging that Halas had bitten him during an altercation. The altercation resulted in Halas' arrest on May 27, 1993 and his criminal prosecution for aggravated battery, battery, and resisting a peace officer. Ultimately, as a result of that same event, on May 17, 1995, France filed the state court civil action ("civil action").

Eight days later on May 25, 1995, Halas filed this second case for relief under Chapter 13 of the Bankruptcy Code. Halas did not schedule France as a creditor in his bankruptcy, claiming now that he was unaware of any possible claim by France (despite the earlier prosecution for biting France) or of the lawsuit filed by France. Halas says that he did not learn of the civil action until February of 1996 when he received a certified letter from Attorney Regan Ebert, France's attorney, informing him that on January 11, 1996 a default judgment had been taken against him during pendency of the second bankruptcy case. Halas claims that he was never served personally with summons in that case. That summons and complaint were assertedly served about July 15, 1995 (after the second bankruptcy had been filed), on Sheldon Grauler, a tenant in Halas' home. Halas contends that Mr. Grauler never gave him the summons and com-

plaint. Whether or not summons was properly served and a default judgment properly entered under Illinois law was and is an issue for the Illinois court not to be reviewed by a federal trial court because of the Rooker/Feldman Doctrine (*Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). However, under 11 U.S.C. § 362, this Court can determine whether the judgment was entered in violation of the Bankruptcy Code's automatic stay and if so whether that judgment is void and unenforceable by plaintiff.

After Halas received the notice of default judgment, on February 15, 1996, he faxed a letter to Attorney Ebert. He claims that the letter contained an addendum including the front page of the bankruptcy petition filed, which showed the case number and date of filing. Ebert testified that she received the letter but that there was no such addendum. Halas also gave Ebert the name of his bankruptcy attorney at the time, Mr. Redfield. Halas took the document to a drug store near his work where he generally receives his faxes and occasionally sends them out. He gave the documents to the pharmacist. As far as Halas knows the fax was sent. Several days later, Halas says that he sent the same information by certified mail. Halas received proof back from the post office that his letter had been delivered and claimed by Ebert.

After Halas learned of the default judgment, there was a hearing in bankruptcy court concerning a motion by another creditor to modify stay or dismiss Halas' bankruptcy case. Halas saw his attorney Redfield in court and he believes he mentioned the default judgment in passing. He did not ask his attorney to take any action on the default judgment because he had informed Ebert of Redfield's name through the February 15, 1996 letter and it was his understanding that it is the responsibility of the creditor to back off from the state court suit. Halas took no more action concerning the default judgment for several months. His second bankruptcy petition (this case) was eventually dismissed on April 9, 1996.

After the dismissal of this bankruptcy case, the next information Halas received about the civil action concerned collection efforts on the judgment in late September 1996. A notice of garnishment and wage deduction was served on Halas' employer, the George May Company. The employer's payroll manager brought the collection papers to Halas. The notice contained the name of Attorney David Platek on behalf of France. Halas called Platek that same day on the phone. Halas claims that he informed Platek that he had filed for bankruptcy. He also told Platek that he had informed Ebert about the bankruptcy and that he thought the wage garnishment was in error. Halas' wages were garnished from September 1996 until May 1998 for a total of $5,400.04. Platek testified that he had two conversations with Halas, but that in neither of the conversations did Halas mention a bankruptcy.

Mr. Platek did not offer to vacate the default judgment. Halas made later calls in an effort to speak to Platek, but did not make further contact. After his conversation with Mr. Platek, Halas retained another attorney, Daniel Henich. In December of 1996, Henich filed a motion to quash service of summons in the civil action. That motion was denied by the state court judge on around March 7, 1997. The motion did not mention the bankruptcy case or allege a violation of the automatic stay.

After denial of that motion, Halas retained attorney Timothy J. Touhy ("Touhy") to file a motion to vacate the underlying default judgment in March of 1997. The motion to vacate judgment was based on pendency of the bankruptcy at the time the default judgment was entered. In November 1997, the state court judge ruled that the judgment should be voided, but made such vacation contingent upon Halas' payment of attorney's fees

incurred by plaintiff, and said that if those attorney's fees were not paid within 30 days, he would not vacate the judgment. Halas' attorney moved for a rehearing on that decision. That motion resulted in an order on May 15, 1998 vacating the judgment, but the order to pay plaintiff's attorney was not vacated. Halas never paid, so the order to pay attorney's fees is still outstanding.

Halas retained Mr. Lloyd, his current bankruptcy counsel to represent him to open this bankruptcy case for the limited purpose of initiating a motion for sanctions under 11 U.S.C. § 362(h).

### Regan Ebert

Ms. Ebert was the attorney for plaintiff Robert France in the lawsuit in the Circuit Court of Cook County entitled *France v. Halas*. She represented him in obtaining a default judgment in January of 1996. After entry of the judgment on January 11, 1996, Ebert sent a letter to Halas through both certified and regular mail. She kept a copy of the letter in her file. It is her habit and practice to retain copies of correspondence that she sends to opposing parties and letters that come to her from opposing parties most of the time. Ebert received the February 15, 1996 letter that Halas sent to her. Ebert testifies that, contrary to Halas' testimony, there was no enclosure, and no reference to any bankruptcy court number or any specified bankruptcy court.

After receiving the letter, she attempted on several occasions to contact the lawyer identified as Halas' bankruptcy attorney, Mr. Redfield. She does not recall when she actually spoke to him, possibly the end of March of 1996. Ebert testified that Redfield informed her that he was no longer Halas' attorney. In addition, he informed her that he did not know the status of any case that was pending. He believed a bankruptcy case had been pending at one time in which he was not the attorney of record, but that case had been dismissed and he knew of no pending proceedings by Halas in bankruptcy. Ebert

and Mr. Redfield also discussed insurance coverage with him. Redfield informed Ebert that he believed Halas had homeowner's insurance on his premises in Park Ridge, and he was going to attempt to find out whether insurance covered the France claim.

After the state court default judgment was entered, Ebert turned over her office file to Mr. Platek in February or March of 1996 (Platek believes it was in late March or early April 1996), because she does not do collection work. At the time, Platek had an office space within the suite that Ebert officed in.

Ebert does not practice in the bankruptcy area. She never received any notice from the bankruptcy court, nor had her client been scheduled as a creditor. At the time, Ebert's understanding of the automatic stay was that a debtor had to list creditors, including anyone a debtor thinks is potentially a creditor, in order for a stay to operate against them. In this she was mistaken, but she did not go to a bankruptcy lawyer to ask what the automatic stay meant. Nor did she ascertain the bankruptcy case number from the court clerk's office because she had given the file and responsibility to Mr. Platek, and therefore felt no further involvement in the case. She had no intention of personally seeking collection or going any further in her representation of Mr. France. She followed through because she had been the attorney of record to obtain the judgment, but with reference to Halas' letter about the bankruptcy she did speak with Redfield to find out details, and also informed Platek that Halas had sent his letter. She had advised Mr. Platek about the letter from Halas concerning a purported bankruptcy with no case number, and told him that she was unable to verify anything from Mr. Redfield or obtain any case number from him.

The case was then in the hands of Platek, and as far as she was concerned Platek was responsible for dealing with that

issue. Ebert did testify in state court in a hearing on the motion to vacate when called by Halas' attorney as a witness.

### Mr. Platek

Platek is an attorney licensed in Illinois and he represented Mr. France in the collection portion of the lawsuit entitled *"France v. Halas."* Platek received Ebert's file relating to France after he and Ebert discussed the case in late March or early April 1996. Platek did not carefully review the file when he first received it, because he had other matters to attend to, but did so sometime in late May or June of 1996. Platek took over the file with the understanding that there had been a default judgment entered in state court, and that Ebert was asking him to collect the judgment entered on behalf of France. Platek knew that he was going to have to do some investigation and find out whether Halas had any assets and where he worked. It did not appear to be a matter of urgency or immediacy, so he put the file in his pile of things to do.

Platek had no specific knowledge of the bankruptcy but had been informed by Ebert that there might be a bankruptcy or that there might have been a bankruptcy, but that she was not sure and did not have a case number. Ebert informed Platek that Redfield had indicated that the Halas bankruptcy case had been dismissed and that she was not aware of any further status. She also repeated Redfield's statement that he was no longer representing Halas.

From the time Ebert and Platek had that conversation until the time Platek gave the file a thorough review in June, Platek did no research nor did he consult with any bankruptcy attorney about the effect of any bankruptcy case on his collection effort.

In late April or early May 1996, Platek called the electronic clerk's number in the Bankruptcy Clerk's office in this district to check whether a bankruptcy case had been filed by Halas as had been claimed. Pla-

tek followed the prompt instructions to enter the names of "Halas, James," and received electronic information about two cases: a prior bankruptcy that had been dismissed, and a second case, this case, that had been filed.

After Platek received the electronic prompt information from the clerk's office, he came to our clerk's office and looked at the file in this case. The clerk was not able to produce the entire file, and Platek did not see the docket entries because some portion of it was on appeal, he was told.

Platek did see the final report of the Chapter 13 trustee in this case. The report showed no assets, no payments to the trustee, a release of the trustee, and appeared to indicate that the case had been dismissed. The report was dated June of 1995. Platek therefore believed that this bankruptcy case had been dismissed some time prior to entry of the judgment, so in his mind at that point the bankruptcy was not an issue in his state court case. The trustee's report does not determine the date of dismissal, however. The docket shows when orders of dismissal are entered. The docket in this case indicates that this second case of Halas' bankruptcy filings was not dismissed until April 9, 1996. But Platek did not check the docket.

Platek took a copy of the Chapter 13 trustee report that had been in the bankruptcy file, and made that part of his argument in the civil action in response to the second state court petition to vacate judgment. Platek continued with his investigation in aid of collection and learned that Halas was employed at Georgia May and so he filed a garnishment action against Halas in September of 1996.

After he filed the garnishment action and served wage deduction summons on Halas' employer, Platek received several phone calls from Halas. In the first phone conversation Halas indicated that he had received notice through his employer that Platek had filed a wage deduction garnish-

ment. He informed Platek that he had never been served with a lawsuit. Halas accused Platek of having knowledge that he had never received proper notice of the state court lawsuit. Platek informed Halas that he had looked at the file in his office and that there was a copy of a return of service indicating that he had been served with summons, and also correspondence indicating that Ebert had notified him of the judgment.

Halas threatened that there would be some untold consequence if Platek didn't voluntarily withdraw the wage deduction. Platek informed him that he didn't think that they should have any further conversation, and Platek hung up. During that conversation, Halas allegedly never mentioned his bankruptcy.

Subsequent to that conversation, Halas called Platek a few more times and left messages on the answering machine. Platek had one more brief conversation with Halas after the first call. Platek does not recall the exact nature of the call but he felt that Halas was threatening some action against him. He informed Halas that he was not involved in obtaining the judgment, that Ebert had transferred the file to him for purposes of collection. Platek testified that Halas did not mention his bankruptcy in the second phone conversation.

Platek first learned from Halas' second state court motion to vacate judgment that this bankruptcy had been pending when the default judgment was entered. The second state court motion was filed in March and received by Platek in April of 1997. However, even after receiving that notice, Platek took no steps to vacate the state court judgment voluntarily. Instead, in state court he vigorously opposed Halas' attempts to vacate the judgment.

When that second motion to vacate judgment was filed and raised the bankruptcy issue, that issue was fully briefed and argued in state court. Platek's argument was based on a split among federal court decisions regarding whether a judgment entered in violation of the automatic bankruptcy stay is void or merely voidable if an effort is made to void it. (Since the very motion he was resisting sought to void the judgment, the point of citing that contrary precedent in opposing the motion to vacate judgment is not clear). Platek also argued that there was simply nowhere to go for relief if the state court judgment was vacated, because this bankruptcy case had in fact, been dismissed (a non sequitur), that there was a technical violation of the stay at worst, but that his client was still entitled to collect on the judgment. The state court judge ruled that the default judgment that had been entered was void because it was entered while this bankruptcy case was pending.

### Mr. Touhy

Touhy is an attorney licensed to practice in Illinois. Touhy represented Halas in the state court litigation entitled *"France v. Halas."* He began representing him in March or April of 1997. He was retained to seek an order vacating the default judgment entered against Halas by or on behalf of France. The petition in state court for relief from the default judgment was filed on or about April 9, 1997, and was served sometime in late May in 1997 upon Mr. France and eventually upon France's attorney. The matter was set for hearing. There was a responsive pleading by Platek moving to strike the defendant's motion, which was denied, and it was not until November of 1997 that the petition to vacate the judgment was actually heard on the merits.

Mr. Touhy attended a hearing on the motion to strike filed by France's attorneys in November of 1997 in front of the state court judge. That hearing on petition for relief from judgment was held after the earlier motion to quash summons had been denied. Touhy had an opportunity to speak with Platek about merits of the case before the court ruled. He sought to persuade him to allow the judgment to be vacated, but Platek refused.

Touhy moved the state court to stay hearing on his pending petition so that he could go to bankruptcy court for relief. That motion was denied. Then the parties went to hearing on the motion to vacate judgment, with the results earlier reported in this Opinion.

## CONCLUSIONS OF LAW

■■ Upon filing of a bankruptcy petition, the automatic stay arises as a matter of law. 11 U.S.C. § 362(a). The automatic stay is a powerful tool of the bankruptcy courts that prohibits inter alia "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . . ." § 362(a)(6). It applies whether or not a creditor is scheduled in the bankruptcy, though lack of scheduling may delay notice to creditors. The purpose of the stay is "to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors. . . ." *Fox Valley Construction Workers Fringe Benefit Funds v. Pride of the Fox Masonry and Expert Restorations,* 140 F.3d 661, 666 (7th Cir. 1998).

■ Some courts have held that actions taken in violation of the stay are voidable. *Easley v. Pettibone Michigan Corp.,* 990 F.2d 905 (6th Cir.1993); *Picco v. Global Marine Drilling Co.,* 900 F.2d 846 (5th Cir.1990). Most courts, however, have found such actions to be void. *Franklin Sav. Ass'n v. Office of Thrift Supervision,* 31 F.3d 1020 (10th Cir.1994); *Raymark Industries, Inc. v. Lai,* 973 F.2d 1125 (3d Cir.1992); *In re Schwartz,* 954 F.2d 569 (9th Cir.1992). This court holds to the latter view. This rule means that to the extent that the stay is violated, the act itself lacks any legal effect against the debtor and other people whom the rule protects, as if the act never occurred. This is true, notwithstanding a creditor's lack of knowledge that a bankruptcy peti-

tion has been filed and the stay is in effect. *In re Smith,* 876 F.2d 524, 526 (6th Cir. 1989); *In re BNT Terminals, Inc.,* 125 B.R. 963, 973 (Bankr.N.D.Ill.1990).

■ While a creditor's lack of knowledge of the existence of a bankruptcy petition is irrelevant for purposes of voiding a creditor's actions, the creditor's lack of knowledge is relevant for purposes of seeking damages under 11 U.S.C. § 362(h). Section § 362(h) provides:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h).

■ A willful violation of the stay does not require that the creditor had the specific intent to violate the stay. *In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989). A creditor can be subject to liability under § 362(h) if the creditor engages in conduct which violates the automatic stay, with knowledge that a bankruptcy petition had been filed. *In re Roete,* 936 F.2d 963, 965 (7th Cir.1991). Willfulness can be found even if the creditor believed himself justified in taking the actions found to violate the stay. *In re Sumpter,* 171 B.R. 835, 843 (Bankr.N.D.Ill.1994). Ignorance of bankruptcy law does not excuse anyone involved in a willful violation.

■ When a willful violation of the stay is found, the Code provides for debtor to recover damages including attorney's fees and costs necessarily and reasonably incurred by reason thereof. *In re Alfred Fridge,* 239 B.R. 182, 190 (Bankr.N.D.Ill. 1999). If the violation of the stay is particularly egregious, punitive damages may be awarded. *In re Atlantic Business & Community Corp.,* 901 F.2d 325 (3d Cir.1990).

■ Attorney Ebert did not willfully violate the automatic bankruptcy stay. She unknowingly violated the stay by obtaining the default judgment. She later

learned of the possibility of a bankruptcy issue when Halas sent her the letter in February of 1996, but then did not know for certain that a case was pending. She spoke with Halas' attorney who informed her that he thought the case had been dismissed. Moreover, Ebert personally took no actions after receiving the letter from Halas except to refer the matter to Platek to work on the case. She transferred her file to Platek and informed him of the possibility of the bankruptcy pendency, but did not work on the case after that point. Ebert was entitled to assume that the lawyer who would carry forward would do so in a lawful manner, and she is not responsible for Platek's acts after that point. However, the fact that her violation was inadvertent as opposed to willful does not alter the legal conclusion here that the default judgment was void when it was entered (and even if the "voidable" precedent were correct, the judgment was properly voided after stay violation was established).

■ Platek did violate the automatic stay, and eventually did so willfully. His initial violation of the stay, like that of Ebert, was inadvertent. Platek took steps to see whether a bankruptcy was pending. He saw that the case appeared to have been dismissed so he initially thought there was no bankruptcy issue.

But Platek did defend against the motion to vacate the default judgment. He persisted in that position even when, during hearing on the motion to vacate, a certified copy of the bankruptcy case docket was produced indicating that the default judgment had been entered before Halas' bankruptcy was dismissed. At that point, Platek should have stopped defending against the motion to vacate judgment and should himself have joined in the Halas request to vacate judgment. Whether unknowing actions in violation of the stay are void or voidable, the state court judgment should have been vacated. By further resistance, Platek caused that hearing to become more expensive to Halas than it had

to be. Moreover, after the judgment was vacated, Platek did not take steps to void the garnishment against Halas' salary and thereby reverse effects of the default judgment and the garnishment which was as void a proceeding as the judgment itself, nor were the garnished funds returned.

■ Platek's client France and debtor must be returned to their status at the time this bankruptcy case was filed with one exception: the judgment of the state court requiring payment of Frances' attorney's fees is not subject to review by this court under the Rooker–Feldman Doctrine earlier cited. However, all garnished funds must be returned. Because the violation by Platek became willful, Halas is also entitled to recover his damages which includes reasonable attorney's fees that he incurred from the time the second motion to vacate was filed to correct the stay violation and a copy of the bankruptcy docket presented. Pursuant to § 362(h) a debtor injured by stay violation "shall" recover damages. Some award of damages is therefore mandatory under § 362(h). But the Bankruptcy Judge has discretion to determine the reasonableness of the fees and costs and set the amounts accordingly. *Stainton v. Lee (In re Stainton)*, 139 B.R. 232 (9th Cir. BAP 1992).

### CONCLUSION

Ebert's violation of the stay was inadvertent, therefore she is not liable for sanctions under § 362(h). Platek's action while initially advertent became willful when he vigorously defended against the motion to vacate the default judgment that was entered in violation of the stay. Platek became aware from the bankruptcy docket that the default judgment was void, yet he would not back down. Accordingly, Platek must be held liable for any damages, including reasonable attorney's fees that debtor incurred from that point as a result of his continued violation of stay.

■ France had no role in all of this except as a client following advice of his

lawyers. He could not be found up to this point to have willfully violated the stay, though it was violated in his name. However, if he now fails to return any garnished funds, his violation will then become willful.

 In determining damages and fees to be allowed following evidentiary hearing thereon, we must take into account the fact that Halas refiled a second case soon after his first was dismissed, thus causing understandable (though temporary) confusion for the creditor's attorneys as to whether a bankruptcy stay blocked their judgment or not. It must also be remembered that Halas did not schedule the possible claim of France to give him notice though he had been accused of assaulting France by biting him. Significantly, Halas could have sought to reopen this bankruptcy case earlier to seek compulsion on France's counsel to vacate the default judgment and for remedy against the garnishment. He could thereby have had relief through a short and inexpensive hearing. Unhappily, Halas' first counsel first attacked the state court judgment on most difficult grounds, asserting lack of adequate service of summons, thus unnecessarily increasing the litigation expense. Then his counsel chose to present an issue familiar to bankruptcy judges before the state court judge likely unfamiliar with the issues.

Only necessary and reasonable fees can be allowed (as well as other actual damages that may be proven), and the foregoing history must be considered in determining what those should be.

Finally, because of the foregoing and also the very real split in federal case authority as to whether acts in unknowing violation of the stay are void ab initio or only voidable when actions are taken against them, no punitive damages are yet appropriate.

By separate order, an evidence hearing will be set as to damages to be assessed against Platek and also France if he does not return garnished funds under 11 U.S.C. § 362(h). Renewed recalcitrance might warrant punitive damages.

This Chapter 13 case itself has no future. Debtor's attempt to obtain bankruptcy relief has failed twice and this cause was reopened only to complete this hearing under § 362(h), and will again be dismissed when that work is done.