**In re Lavonne Carol PIKE, Debtor.**

**No. 00–36842.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

Feb. 9, 2001.

Lavonne Carol Pike, Debtor, New Carlisle.

John C. Juergens, Springfield, for Debtor.

John A. Schuh, Cincinnati, for Ford Motor Credit.

Jeffrey M. Kellner, Englewood, Chapter 13 Trustee.

## MEMORANDUM OPINION

JOHN E. HOFFMAN, Jr., Bankruptcy Judge.

The issue before the Court is whether Lavonne Carol Pike (the "Debtor") is eligible to be a debtor under Chapter 13 of the Bankruptcy Code (the "Code"). The issue of the Debtor's eligibility for Chapter 13 relief has been raised by Ford Motor Credit Co. ("Ford") in its Motion to Dismiss Chapter 13 Case (the "Dismissal Motion"). An expedited hearing on the Dismissal Motion (the "Hearing") was conducted on January 22, 2001. The Court concludes that the Debtor's previous Chapter 13 case was dismissed due to the Debtor's willful failure to abide by orders of the Court and appear in proper prosecution of her case. Thus, under § 109(g) of the Code, the Debtor is ineligible for Chapter 13 relief. An order dismissing this case shall be entered.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr.P. 7052.

### I. *Jurisdiction*

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this judicial district. This is a core proceeding. 28 U.S.C. § 157(b)(2).

### II. *Factual and Procedural Background*

Ford has filed memoranda supporting the Dismissal Motion and its motion for relief from stay, which was filed contemporaneously with the Dismissal Motion. In the memoranda filed by Ford, a chronology of the events preceding the filing of the Dismissal Motion is set forth. At the Hearing, Debtor's counsel stipulated to the accuracy of the factual chronology, a summary of which follows.

The Debtor has filed six bankruptcy petitions in the past ten years. Four of those filings have been made within the past two and one half years.

On July 20, 1992, the Debtor filed a Chapter 7 petition (the "First Case"). The Debtor received a discharge in the First Case pursuant to 11 U.S.C. § 727.

On September 29, 1994, the Debtor filed her second bankruptcy case (the "Second Case"), which sought relief under Chapter 13 of the Code. The Second Case was dismissed. No evidence was offered by either Ford or the Debtor as to the reason for dismissal of the Second Case.

On June 29, 1998, the Debtor purchased a 1996 Ford Thunderbird (the "Automobile"). Ford financed the purchase of the Automobile, providing the Debtor with a loan in the original principal amount of $9,897.40 (the "Loan") and perfecting a security interest in the Automobile to secure the Loan's repayment. On August 29, 1998, the Debtor made her first and only contractual payment on the Loan in the amount of $263. On October 16, 1998, following the Debtor's payment default, Ford repossessed the Automobile. Three days later, the Debtor filed a Chapter 13 petition (the "Third Case") and the next day Ford returned the Automobile to her. At the time the Third Case was filed, Ford was listed as the Debtor's only secured creditor. The Debtor scheduled approximately $500 of unsecured debt. An additional unsecured creditor, holding a claim of approximately $1,900, later was added to the Debtor's schedules by amendment. On July 19, 1999, the Third Case was dismissed due to the Debtor's failure to make plan payments to the Chapter 13 Trustee (the "Trustee").

On August 11, 1999, the Debtor filed another petition for Chapter 13 relief (the "Fourth Case"). In the Fourth Case, the Debtor listed two unsecured debts totaling $2,200. Ford, which was scheduled as holding a secured claim of $11,000 and an unsecured claim of $21.49, was listed as the Debtor's only other creditor in the Fourth Case. On December 17, 1999, the Trustee moved for dismissal of the Fourth Case for failure to make the required plan payments. The Trustee's motion was denied and the Debtor was ordered to make future plan payments or her case would be dismissed. On March 21, 2000, the Fourth Case was dismissed due to nonpayment.

On May 10, 2000, Ford again repossessed the Automobile. The same day, the Debtor filed a "skeletal"[1] Chapter 13 petition (the "Fifth Case"). Ford returned the Automobile the next day. In the Fifth Case, the Debtor scheduled three unsecured creditors who were owed a total of approximately $2,700. Ford, which was the only other creditor listed in the Fifth Case, was scheduled as holding a secured claim of $6,000 and an unsecured claim of $6,000. On September 22, 2000, the Trustee moved for dismissal of the Fifth Case as a result of the Debtor's default in plan payments. By order entered November 8, 2000 (the "November 8 Order") the Trustee's motion was denied. The November 8 Order provided in pertinent part:

> IT IS FURTHER ORDERED that the debtor shall pay $1,420.00 by November 3, 2000 and if the debtor fails to make the aforesaid payment, the Trustee shall submit an order to the court dismissing this case without further notice or hearing. After November 3, 2000 the debtor shall continue to make the plan payments.

On November 17, 2000, the Fifth Case was dismissed for nonpayment. The order dismissing the Fifth Case (the "Dismissal Order") simply recited that the case was being dismissed due to the Debtor's failure to make plan payments in accordance with the November 8 Order.

---

1. Fed. R. Bankr.P. 1007 requires a Chapter 13 debtor to file schedules of assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases and a statement of financial affairs (collectively, the "Schedules"). If those Schedules are not filed with the petition, they must be filed within fifteen days thereafter. Fed. R. Bankr.P. 3015(b). A debtor may obtain an extension of time to file the required documents upon motion and for good cause shown. *Id.* A skeletal petition refers to a petition filed without the Schedules required by Rule 1007. *See In re Robinson,* 198 B.R. 1017, 1020 (Bankr.N.D.Ga.1996).

Ford repossessed the Automobile for the third time on December 27, 2000. That same day, Debtor informed Ford she would be filing for bankruptcy protection and told a representative of Ford that her attorney was Rebecca Barthelemy–Smith. Ford's counsel contacted Ms. Barthelemy–Smith, who advised Ford's counsel that she was not, in fact, representing the Debtor. Two days later, on December 29, 2000 (the "Petition Date") the Debtor filed a *pro se*, skeletal[2] Chapter 13 petition (the "Sixth Case"). Ford then filed the Dismissal Motion.

Ford has received a total of $1,876.06 in repayment of the Loan. This amount was received from the following sources:

| Amount | Source |
| --- | --- |
| $ 263.00 | First and only contractual payment made on the Loan by the Debtor on August 29, 1998 |
| $ 876.68 | Total disbursements made to Ford by the Trustee in the Third Case |
| $ 528.40 | Total disbursements made to Ford by the Trustee in the Fourth Case |
| $ 207.98 | Total disbursements made to Ford by the Trustee in the Fifth Case |
| Total . . . . . $1,876.06 | |

Had the Debtor continued making regular monthly payments of $263 to Ford from the date that the Loan's first payment was due through the Petition Date, Ford would have received contractual payments totaling $7,364.

### III. *Arguments of the Parties*

According to Ford, the Debtor has engaged in precisely the type of abusive conduct that prompted enactment of § 109(g) of the Code: the filing of successive bankruptcy petitions to obtain the benefit of the automatic stay and thereby thwart Ford's efforts to repossess and sell the Automobile. Ford asserts that the same sequence of events has unfolded in each of the Third, Fourth and Fifth Cases: (1) a Chapter 13 filing by the Debtor; (2) default in plan payments after only minimal progress toward plan completion was made; (3) dismissal due to the Debtor's repeated payment defaults; and (4) refiling after Ford's repossession of the Automobile. Ford argues that from this pattern of serial filings—without a change in the Debtor's circumstances—the Court may infer that the Fifth Case was dismissed due to Debtor's willful failure to abide by orders of the Court and/or properly prosecute her case. As further evidence of willfulness, Ford cites the Debtor's admission at the Hearing that she intentionally failed to make payments in the Fifth Case because she believed that an extrajudicial workout arrangement could be negotiated with Ford after dismissal of the case. Thus, Ford maintains that the Debtor is ineligible for Chapter 13 relief.

The Debtor asserts that, as a matter of law, § 109(g) does not bar her eligibility for relief because the Dismissal Order did not expressly state that dismissal of the Fifth Case resulted from a willful failure on her part. Alternatively, the Debtor maintains that a change in circumstances since the Fifth Case's dismissal justifies a finding that the Debtor's successive filings have been proper and, thus, she is eligible to be a Chapter 13 debtor.

### IV. *Legal Analysis*

#### A. *The Section 109(g) Eligibility Requirement*

██ The Code's central purpose is remedial: to afford the honest but unfortunate debtor "a new opportunity in life with

---

**2.** As noted above, at the time the Fifth Case was filed, the Debtor was appearing *pro se*. She did not seek an extension of time within which to file her Schedules. The Schedules were not filed until January 18, 2001, one business day prior to the hearing on the Dismissal Motion. The Debtor retained counsel sometime between the Petition Date and the date of the Hearing.

a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt,* 292 .U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). But debtors who do not file in good faith and seek to abuse the bankruptcy process should not be afforded relief. *See Industrial Ins. Servs., Inc. v. Zick (In re Zick),* 931 F.2d 1124, 1129 (6th Cir.1991) ("[A]lthough the jurisdictional requirement of good faith is not explicitly stated in the statute, it is inherent in the purposes of bankruptcy relief.") (quoting *McLaughlin v. Jones (In re Jones),* 114 B.R. 917, 926 (Bankr.N.D.Ohio 1990)); *In re Casse,* 219 B.R. 657, 660 (Bankr. E.D.N.Y.1998), *aff'd,* 198 F.3d 327 (2d Cir. 1999) ("[D]ebtors who do not file in good faith should not be afforded the benefits of the bankruptcy process.").

■ The successive filing of Chapter 13 petitions is not expressly prohibited by the Code. *See Johnson v. Home State Bank,* 501 U.S. 78, 87–88, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Society Nat'l Bank v. Barrett (In re Barrett),* 964 F.2d 588, 591 (6th Cir.1992) ("[S]erial filings are not, in and of themselves, improper . . . ."); *In re Pappalardo,* 109 B.R. 622, 625 (Bankr. S.D.N.Y.1990) ("Successive Chapter 13 bankruptcy filings by the same debtor, without any additional facts, will not constitute a bad faith manipulation of the Bankruptcy Code."). But a debtor who makes serial filings to obtain the protection of the automatic stay in order to delay or thwart creditor action, while refusing to fulfill the duties imposed by the Code, faces imposition of the 180–day bar to refiling provided in 11 U.S.C. § 109(g).

Section 109(g) of the Code provides:

(g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if:

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g).[3] Section 109(g) represents Congress's response to the problem created by those debtors who make sequential filings to abuse the Code and creditors. *See* William L. Norton, Jr., *Bankruptcy Law and Practice* § 18:14, at 18–55 to 18–56 (2d ed. 1997) ("Section 109(g) was added to curb the perceived abuse of bankruptcy by debtors who file successive petitions to thwart enforcement of a mortgage or other security interest."); Jeffrey W. Morris, *Substantive Consumer Bankruptcy Reform in the Bankruptcy Amendments Act of 1984,* 27 Wm. & Mary L.Rev. 91, 101 (1985) ("The rationale underlying section 109[ (g) ] is that debtors should not be permitted to disrupt the court's processing of bankruptcy cases. Debtors covered by section 109[ (g)(1) ] have had their chance for bankruptcy relief, and have wasted it. This new subsection represents an appropriate response to isolated instances of debtor misconduct.").

**B. *The Timing of a "Willfulness" Finding***

■ The Court must determine that the Debtor is eligible for relief under Chapter 13, she contends, because the Dismissal

---

**3.** The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 352, 269 (1984), added new subsection (f) to § 109 to provide a 180–day bar to filing for debtors who engaged in the type of abusive conduct delineated in the statute. This was redesignated as subsection (g) by § 253 of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. 99–554, 100 Stat. 3105 (1986). Throughout this opinion, the statute will be referred to as § 109(g).

Order did not contain an express finding that dismissal of the Fifth Case resulted from her willful failure to abide by an order of the Court or properly prosecute her case. By the Debtor's reckoning, a bankruptcy court's finding of willfulness may be made only at the time of dismissal and not upon the filing of a subsequent case. The Court disagrees. As Judge Scott noted in *Clinton State Bank v. Ward (In re Ward),* 78 B.R. 914, 916 (Bankr. E.D.Ark.1987), this argument amounts to "no more than technical and/or semantic game playing."

Section 109(g) does not specify the time when the finding of a willful failure by the debtor must be made by a bankruptcy court—*i.e.,* upon dismissal of a previous bankruptcy case or when a subsequent case is filed. Because the plain language of § 109(g) does not impose a timing requirement for a "willfulness" finding, the vast majority of courts that have considered the issue have concluded that willfulness may be found either at the time of dismissal, or in a subsequent case, when the court is called upon to determine if the earlier dismissal renders the debtor ineligible under § 109(g). *See Colonial Auto Center v. Tomlin (In re Tomlin),* 105 F.3d 933, 942 (4th Cir.1997) ("[A] finding [of a willful failure by the debtor] need not be made at the time of the earlier dismissal; it can be made when the bankruptcy court is later called upon to determine if § 109(g) bars a subsequent filing."); *Montgomery v. Ryan (In re Montgomery),* 37 F.3d 413, 415 (8th Cir.1994) ("A finding of willfulness must be made when a sanction is imposed, but need not be made earlier. Here, a finding of willfulness was necessary only when the bankruptcy court dismissed the second petition."); *Casse,* 219 B.R. at 663 n. 4 ("A finding of willful failure to abide by a court order or to properly prosecute the case need not be made at the time of dismissal, but can be made subsequent to a new filing once the court is asked to determine if § 109(g) should be invoked to bar that filing."); *Robinson,* 198 B.R. at 1023 n. 8 ("The

finding of willfulness may be made in a prior case in connection with the dismissal of that case .... Alternatively, a finding of willfulness may be made in a subsequent case when the issue is raised in the context of whether the previous dismissal was based upon a debtor's willful conduct and, thus, renders the debtor ineligible under § 109(g) to proceed in the subsequent case."); *In re Faulkner,* 187 B.R. 1019, 1023 (Bankr.S.D.Ga.1995) (same); *Ward,* 78 B.R. at 916 (same). *But see In re Hammonds,* 139 B.R. 535, 540 (Bankr. D.Colo.1992) (declining to dismiss subsequent case based upon debtor's ineligibility under § 109(g) because dismissal order in previous case was "not expressly premised upon a finding of willfulness").

In sum, contrary to the Debtor's suggestion, the fact that the Dismissal Order did not contain a finding of willfulness is not outcome determinative. Rather, the Court can determine in the present case—in the context of assessing the Debtor's eligibility under § 109(g)—whether the Fifth Case was dismissed as a result of the Debtor's willful failure to abide by an order of the Court or properly prosecute her case.

### C. *Serial Filing and § 109(g)'s Willfulness Standard*

■■ A party moving for dismissal under § 109(g)(1) has the burden of introducing evidence to support its allegation that the debtor willfully failed to abide by a court order or appear before the court in proper prosecution of the case. *See In re Herrera,* 194 B.R. 178, 188 (Bankr.N.D.Ill. 1996); *In re Pretzer,* 96 B.R. 790, 792 (Bankr.N.D.Ohio 1989). Because the effect of § 109(g) is to deprive a debtor of the right to relief under the Code for 180 days, "[t]he denial of eligibility should not be lightly or routinely imposed on the debtor without evidence that the debtor knowingly and intentionally disobeyed an order of court or knowingly and intentionally failed to appear in prosecution of the case." *Herrera,* 194 B.R. at 188 (quoting

*In re Surace,* 52 B.R. 868, 871 (Bankr. C.D.Cal.1985)).

 "Mere failure to pay under a confirmed plan, even though payment under the plan is an order of the Court, does not cause a former debtor to be ineligible. Ineligibility under Section 109(f)(1) requires a finding of [willfulness]." *In re Patel,* 48 B.R. 418, 419 (Bankr.M.D.Ala. 1985). Although the term "willful" is not defined in the Code, it has been interpreted to mean deliberate or intentional. *See Herrera,* 194 B.R. at 188–89 (" 'Willful' in this provision means deliberate."); *Pappalardo,* 109 B.R. at 625 (" '[W]illful' as used within the meaning of 11 U.S.C. § 109(g)(1) means deliberate or intentional rather than accidental or beyond the debtor's control"); *In re Ellis,* 48 B.R. 178, 179 (Bankr.E.D.N.Y.1985) ("Willful is generally used to describe conduct which is intentional, knowing and voluntary, . . . . A willful failure to do a required act necessitates a showing that the person, with notice of their responsibility, intentionally disregarded it or demonstrated 'plain indifference.' ") (citations omitted).

Courts generally have inferred willfulness from a series of dismissals and refilings without a showing of changed circumstances. As the court explained in *In re Nelkovski,* 46 B.R. 542, 544 (Bankr.N.D.Ill. 1985):

> [R]epeated failure to appear or lack of diligence [will be construed] as willful conduct. Repeated conduct strengthens the inference that the conduct was deliberate. Additionally, the court will infer from a pattern of dismissals and refilings in unchanged circumstances willful failure to abide by orders of the court and an abuse of the bankruptcy process which this amendment was designed to prevent.

*See also Walker v. Stanley,* 231 B.R. 343, 348 (N.D.Cal.1999) ("The [debtors'] circumstances appear unchanged because their bankruptcy petitions stem from the same basic facts and circumstances . . . . Because [debtors] repeatedly failed to per-form their duties under the Bankruptcy Code, they willfully failed to abide by the Bankruptcy Court's orders."); *Herrera,* 194 B.R. at 189 ("[P]attern of repeated failures . . . can be construe[d] as willful conduct and a failure to appear before the Court in proper prosecution of the case.").

 Serial filings in the absence of changed circumstances will support a finding that a debtor willfully failed both to abide by court orders and appear in proper prosecution of his/her case. *See Herrera,* 194 B.R. at 189 ("[R]epeated failure to make payments under the previous plans, and the refilings in unchanged circumstances constitute willful failure to abide by orders of the Court . . . . and a failure to appear before the Court in proper prosecution of the case."). Thus, a serial filer who repeatedly fails to perform the duties imposed on debtors by the Code—including the duty of payment in a Chapter 13 case—fails "to appear before the court in proper prosecution of the case" within the meaning of § 109(g)(1). *See In re King,* 126 B.R. 777, 781 (Bankr.N.D.Ill.1991) ("[T]he § 109(g) phrase 'willful failure of the debtor . . . to appear before the court in proper prosecution of the case' includes willful and deliberate failure of debtors to perform their duties, whether . . . to file schedules and Statement of Affairs, or . . . to make Plan payments to the Trustee, or in any case to attend statutory meetings of creditors. The provision would not be the meaningful tool intended by Congress if 'appear before the court' meant . . . [that debtors] could thumb their noses at their duties so long as they come into court on dates set.").

 Here, the undisputed evidence establishes that the Debtor has made a series of Chapter 13 filings, failed to make meaningful progress toward the completion of her confirmed Chapter 13 plans, thereby resulting in dismissal due to nonpayment and, following dismissal, repeated the cycle by refiling after Ford repossessed the Automobile. This abusive con-

884

duct suggests a pattern of repeated failures that the Court concludes were willful. Thus, based upon the Debtor's history of serial filings, which appear to have been made solely to forestall Ford's efforts to repossess and sell the Automobile, the Court finds that dismissal of the Fifth Case resulted from the Debtor's willful failure to abide by orders of the Court or appear before the Court in proper prosecution of her case. *See Tomlin,* 105 F.3d at 941–42 (determining that § 109(g) prohibition on refiling for 180–day period was an appropriate sanction for debtor who "continuously fil[ed] petitions ... [to] prevent[ ] foreclosure action on her home"); *In re Armwood,* 175 B.R. 779, 785 (Bankr. N.D.Ga.1994) (finding debtor ineligible under § 109(g)(1) because the debtor's "fourth case was also filed to prevent repossession of the car").

The Court's conclusion that the Fifth Case was dismissed as a result of a willful failure on the Debtor's part is supported by her own testimony. On cross-examination, the Debtor conceded that she deliberately failed to make payments to the Trustee with full knowledge that dismissal of the Fifth Case would result. After dismissal, the Debtor testified, she intended to negotiate a workout agreement with Ford. No evidence was presented that Ford in any way encouraged dismissal of the Fifth Case or gave the Debtor any indication that it would be amenable to an extrajudicial compromise of its claim. While the Debtor's belief that she could negotiate an out-of-court resolution of Ford's claim may have been unduly (if not irrationally) sanguine, particularly given her history of repeated payment defaults, the fact remains that Debtor intentionally failed to remit payments to the Trustee knowing that the dismissal of the Fifth Case would inevitably follow. Thus, by her own admission, the Debtor willfully failed to abide by Court orders entered in the Fifth Case, which required the Debtor to make regular payments to the Trustee (including the confirmation order and the November 8 Order), thereby resulting in

dismissal of the Fifth Case. *See Herrera,* 194 B.R. at 189 ("Willful failure 'to appear before the court in proper prosecution of the case' can also include a debtor's willful failure to pay under the plan ...."); *In re Halas,* 249 B.R. 182, 186 (Bankr.N.D.Ill. 2000) ("Willful failure to pay from available funds ... could certainly be grounds for dismissal of a Chapter 13 case, and might support a finding of willfulness under § 109(g) ....").

■ The Debtor maintains that her financial circumstances have changed for the better in the forty-two-day period between dismissal of the Fifth Case and filing of the present case. "In the context of a serial or successive filing, a bona fide change in circumstances may justify finding that a successive filing was proper." *Herrera,* 194 B.R. at 187. *See also Downey Sav. & Loan Ass'n v. Metz (In re Metz),* 820 F.2d 1495, 1498 (9th Cir.1987) ("[A] bona fide change in circumstances is precisely what the bankruptcy judge should examine to determine whether successive filings are proper."). *Armwood,* 175 B.R. at 784 ("In the event of serial petitions, to avoid dismissal on the grounds of bad faith, a debtor usually should be able to show a change in circumstances between the two filings.").

■ The Debtor testified that she recently has terminated her partnership in a hairdressing salon in Dayton, Ohio. As a result, she no longer is responsible for paying one-half of the expenses of the salon. The Debtor currently is self-employed, renting booth space at a hair salon in New Carlisle, Ohio, where she lives. This change, the Debtor asserts, will lower her expenses and increase her income. Yet, a comparison of Schedules I (Current Income of Individual Debtor) and J (Current Expenditures of Individual Debtor) filed by the Debtor in the Fifth Case with those filed herein shows an increase in net income of only six dollars per month.

"[C]hanged circumstances required to justify a successive filing must be positive changes, *i.e.*, debtor's objective financial circumstances and ability to perform the plan proposed must have improved between the dismissal of the prior case and commencement of the new case." *In re Huerta*, 137 B.R. 356, 368 (Bankr. C.D.Cal.1992). A mere six dollar monthly increase in disposable income does not constitute a significant enough change of circumstances to warrant a finding that the Debtor's sequential filings have been proper. The Court simply cannot conclude that there is any greater likelihood that the Debtor will make payments in this case than in her previous four uncompleted Chapter 13 cases.[4]

## V. *Conclusion*

For the reasons stated above, the Dismissal Motion is **GRANTED.** An order dismissing this case and barring the Debtor from filing a case under any chapter of the Code for 180 days from the date of dismissal of the Fifth Case, *i.e.*, 180 days from November 17, 2000, will be entered separately.

---

**4.** Given the dismissal of this case, the Court need not pass upon Ford's motion for relief from stay. "[A] creditor violates the automatic stay by withholding possession of a Chapter 13 debtor's car after demand and tender of adequate protection." *TransSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 686 (6th Cir.1999). "When a creditor fears that 'adequate protection' is in immediate jeopardy if possession is delivered consistent with § 542(a), the 'congressionally established bankruptcy procedure' is expedited relief under § 362(f) ...." *Id.* at 685. Here, Ford invoked § 362(f), filing a motion for relief from stay and requesting an emergency hearing. The emergency motion for relief from stay was heard along with the Dismissal Motion. At the Hearing, no evidence was presented to establish that either the Debtor (during the period of time that she was appearing *pro se*) or her counsel made a demand to Ford for turnover of the Automobile between the Petition Date and the Hearing. Nor did the Debtor offer documentary evidence at the Hearing establishing that the Automobile was insured. Thus, under the narrow circumstances of this case, the Court finds that Ford's continued possession of the Automobile after the Petition Date was proper.