BOYCE F. MARTIN, JR., Circuit Judge.
Society National Bank appeals a bankruptcy court decision that found that a debt owed to Society and listed in a prior Chapter 7 bankruptcy by James Barrett could be included in Barrett’s Chapter 13 plan, and that Barrett filed his Chapter 13 plan in good faith. A recent Supreme Court ruling, Johnson v. Home State Bank, — U.S. -, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), expressly resolves the first issue raised by Society adversely and thus is not before us. Johnson, which speaks to the subject of serial filings in Chapter 7 and Chapter 13, holds that so-called “Chapter 20” filings are not precluded merely because they are serial in nature. The matter presently on appeal concerns whether the bankruptcy court erred in finding that the serial filings here were submitted in good faith. We find they were filed in good faith and affirm.
On March 24, 1982, Barrett and his wife, Peggy Barrett, executed and delivered to Society a promissory note for $35,000 and an open-ended mortgage on their residence to secure payment of the note. Ms. Barrett is not a debtor in any of the bankruptcy cases described below. Subsequently, the couple fell behind in their payments. On August 8, 1986, Society began foreclosure proceedings on the real estate in an Ohio state court.
On January 5, 1987, the day of the scheduled foreclosure sale, Barrett filed the first of his three bankruptcy cases under Chapter 13. With this filing, he was able to stay the foreclosure sale of his residence. Because his actual 1987 income fell far short of his projected income, Barrett made no payments to the Chapter 13 trustee nor to Society while this first bankruptcy case was pending. On May 8, the case was converted to a Chapter 7 filing, and the court granted Society relief from the stay in June. On August 14, the court discharged Barrett’s debts under Chapter 7. Among the debts the court discharged was Barrett’s personal liability on the debt secured by Society’s mortgage on his residence.
On September 21, six days before the date of the rescheduled foreclosure sale, Barrett filed a second Chapter 13 action. Again, Barrett’s actual income was considerably less than what he projected in his filing, and he made no payments to the Chapter 13 trustee nor to Society while this case was pending. This time, the bankruptcy court, 105 B.R. 385, found that Barrett had filed his Chapter 13 petition in bad faith.[1] The bankruptcy court, therefore, dismissed Barrett’s Chapter 13 filing with *590 out prejudice and ordered him to pay Society’s attorney fees. The court also enjoined Barrett from filing another bankruptcy case for 180 days.
Subsequently, Society rescheduled the foreclosure sale for April 4, 1988. Before the sale, however, Barrett filed a motion in the state court seeking to stay the sale. With his motion, Barrett included an affidavit that stated he had sufficient money to fund a Chapter 13 plan but was prevented from filing the plan because of “some technicalities at the bankruptcy court....” This “technicality” was the bankruptcy court’s November 19, 1987, dismissal order forbidding Barrett from filing any additional petitions for 180 days. The common pleas court, unaware of the true nature of the “technicality,” granted Barrett’s motion and stayed the foreclosure sale until May 19.
Upon the expiration of the state common pleas court’s stay, Society rescheduled the foreclosure sale for June 13, and the residence was sold to a third party on that date. On June 14, Barrett filed a motion to stay the confirmation of the sale. The state court granted Barrett’s motion on July 7. Although the stay was ultimately vacated, the purchaser backed out of the sale because of the ensuing delay. Once again Society rescheduled the foreclosure sale, this time scheduling the sale for December 13. Barrett filed the present case on November 7, which stayed the December 13 foreclosure sale.
As the matter is phrased by bankruptcy court, this case presents “the question of whether a debtor’s prior actions should preclude his now obtaining relief under Chapter 13 even though his circumstances have changed so markedly as to virtually assure that the objecting creditor will be paid in full and the Debtor’s plan will be successful.” In finding Barrett’s present filing was in good faith, the bankruptcy court relied upon the “totality of the circumstances” test.
Under the totality of the circumstances test, we analyze both the prior conduct of the bankruptcy petitioner and the petitioner’s present circumstances. With regard to Barrett’s prior conduct, the bankruptcy court found — and we certainly agree — that Society’s anger toward Barrett was “understandable and to a significant extent justified.” The court noted that the Bar-retts’ actual income in the first and second Chapter 13 plans fell significantly short of their projected income. In addition, Barrett represented the value of his house as low as $35,000 and as high as $60,000 when the various valuations served his ends. Finally, the bankruptcy court found that Barrett's statement to the state court that the 180-day stay was a “technicality” clearly misstated the real situation. Given these factors, the bankruptcy court concluded that Barrett’s second Chapter 13 proceeding was properly dismissed as lacking good faith.
Despite the bad faith Barrett demonstrated in his prior Chapter 13 petition, the bankruptcy court determined that sufficient good faith existed with regard to Barrett’s third and present claim to allow Barrett to proceed. The court made several findings in support of this determination: 1) Barrett had demonstrated his ability to fund his most recent Chapter 13 by making appropriate payments to both Society and the Chapter 13 trustee; 2) Barrett was still employed at the Cleveland Municipal Court, which demonstrated a prospective ability to continue payments; 3) the present Chapter 13 plan provided for payment of Society’s entire claim; and 4) Barrett was willing to reassume personal liability for his debt to Society, which indicated his sincere commitment to repay fully the debt.
Although the bankruptcy court found that the present claim was made in good faith, the court sanctioned Barrett for his bad faith in the prior bankruptcy action. The court ordered Barrett to pay Society’s attorney fees. To the extent that Society's efforts to foreclose the property were thwarted by Barrett’s misconduct, the court ordered Barrett to pay Society’s reasonable costs and expenses in pursuing foreclosure.
On appeal by Society the district court affirmed the bankruptcy court’s determination of good faith as to the third filing.
*591 As an initial matter, we address Society’s request that we grant an injunction against Ms. Barrett to prevent her from filing a bankruptcy case in the future. She is the joint owner of the mortgaged house. According to Society, by filing an Answer and appearing at the hearing, Ms. Barrett submitted to the bankruptcy court’s jurisdiction. Because the bankruptcy court has equitable powers under 11 U.S.C. § 105(a) to “issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title,” Society claims an injunction should be granted against Ms. Barrett.
We reject this argument because we find it is mooted by our finding of good faith, as described below. We would also observe that Society’s attack on Ms. Barrett is more vindictive than it is properly founded in a reasonable interpretation of current law. The “bankruptcy court is a court of limited jurisdiction (cite omitted) ... Bankruptcy Judges for each circuit are appointed by the United States Court of Appeals for that Circuit ... [and] have only derivative jurisdiction” from the district courts. In re Granger Garage, Inc., 921 F.2d 74, 77 (6th Cir.1990). The powers sought to be invoked by Society in this instance are not powers properly invoked by a bankruptcy court.
We now turn to Society’s central argument on appeal, that Mr. Barrett lacked the requisite good faith for the present Chapter 13 filing. Society argues we should review the court’s good faith determination as a conclusion of law rather than as a finding of fact. This would necessitate review under the de novo standard rather than review under the clearly erroneous standard. Society also claims that a favorable change in Barrett’s financial circumstances is insufficient by itself to offset prior bad faith filings and pre-petition abuses by Barrett. Finally, Society argues that even should we find this matter governed by the clearly erroneous standard of review, the bankruptcy court’s determination of good faith fails under that standard.
Our first step is to establish the proper standard of review. Under 11 U.S.C. § 1325(a)(3), a petitioner must propose a Chapter 13 plan in good faith and not by any means forbidden by law. The Bankruptcy Code, however, fails to precisely define “good faith.” 11 U.S.C. § 1325(a)(3). Our circuit’s good faith test requires consideration of the totality of circumstances. See In re Okoreeh-Baah, 836 F.2d 1030 (6th Cir.1988); In re Caldwell, 851 F.2d 852 (6th Cir.1988); In re Doersam, 849 F.2d 237 (6th Cir.1988). Compare to Memphis Bank & Trust Co. v. Whitman, 692 F.2d 427 (6th Cir.1982). Society argues on appeal that our review of this test should be de novo and not under the clearly erroneous standard, because it is a matter of law and not a matter of fact. We reject Society’s argument that this matter must be reviewed de novo. We have expressly addressed this question and held that a bankruptcy court’s good faith determination based on the totality of the circumstances must be reviewed under the clearly erroneous standard. In re Caldwell, 895 F.2d 1123, 1127 (6th Cir.1990) (citing In Matter of Metz, 820 F.2d 1495 (9th Cir.1987)).
Insofar as Society questions the standard of review for a court’s good faith determination where the petitioner has made serial filings, our consideration of this question represents our first decision on the issue. The recent decision in Johnson, 111 S.Ct. at 2150, makes clear that serial filings are not, in and of themselves, improper, unless they fall within one of the enumerated categories of prohibited serial filings:
Congress has expressly prohibited various forms of serial filings. See, e.g., 11 USC § 109(g) (no filings within 180 days of dismissal); § 727(a)(8) (no Chapter 7 filing within six years of a Chapter 7 or Chapter 11 filing); § 727(a)(9) (limitation on Chapter 7 filing within six years of Chapter 12 or Chapter 13 filing) [11 USCS §§ 109(g), 727(a)(8), 727(a)(9)], The absence of a like prohibition on serial filings of Chapter 7 and Chapter 13 petitions, combined with the evident care with which Congress fashioned these express prohibitions, convinces us that Congress did not intend categorically to fore *592 close the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief.
Id. at 2155. Because the serial filing at issue here does not fall within one of the categories expressly prohibited by statute, the clearly erroneous standard of review remains applicable.
Society argues that the bankruptcy judge improperly considered all the pre-petition conduct as “but one element” to be viewed in the totality of circumstances. Society argues this is the wrong method because it would suggest that Barrett’s pattern of pre-petition conduct is merely a series of unrelated acts. Society further argues that the sum total of circumstances considered by the court under the totality of the circumstances test demonstrates a good faith determination was clearly erroneous.
In Okoreeh-Baah, 836 F.2d at 1030, the debtor violated his commitment to the first secured lender by failing to perfect the lien and then pledging the interest in the car to another lender. We found “a debtor’s pre-petition conduct is but one element in the debtor’s total circumstances; the good faith calculus requires the use of discretion by the bankruptcy judge.” Id. at 1033. The critical issue is whether there is “a sincerely-intended repayment of pre-petition debt consistent with the debtor’s available resources.” Id. Okoreeh-Baah indicates that there are at least twelve pre- and post-petition factors which a bankruptcy judge should weigh in making a good faith determination. Okoreeh-Baah, 836 F.2d at 1032 n. 3 (citing to In re Kitchens, 702 F.2d 885 (11th Cir.1983)). These factors include (1) the debtor’s income; (2) the debtor’s living expenses (3) the debtor’s attorney fees; (4) the expected duration of the Chapter 13 plan; (5) the sincerity with which the debtor has petitioned for relief under Chapter 13; (6) the debtor’s potential for future earning; (7) any special circumstances the debtor may be subject to, such as unusually high medical expenses; (8) the frequency with which the debtor has sought relief before in bankruptcy; (9) the circumstances under which the debt was incurred; (10) the amount of payment offered by debtor as indicative of the debtor’s sincerity to repay the debt; (11) the burden which administration would place on the trustee; and (12) the statutorily-mandated policy that bankruptcy provisions be construed liberally in favor of the debtor. See also Doersam, 849 F.2d at 239 (listing 11 factors).
Whether the bankruptcy court weighed Barrett’s pre-petition conduct as a single element, as Society argues, or as a series of separate instances of bad conduct is unclear. However, as long as the court sufficiently considered Barrett’s prior conduct under the totality of circumstances test, the exact manner in which the bankruptcy court weighed the prior conduct is irrelevant given the bankruptcy court’s discretionary power in making a determination of good faith. See Okoreeh-Baah, 836 F.2d at 1033. The bankruptcy court found that there was a change of circumstance such that there was “no question but [that] the Debtor intends in his plan to pay Society in full or of his capability of doing so.” The bankruptcy court reached this conclusion after fully considering Barrett’s misconduct in the prior bankruptcy filing. The bankruptcy court accounted for Barrett’s prior bad behavior by ordering Barrett to pay attorney fees plus the “reasonable” costs Society incurred because of the thwarted foreclosures. The court weighed Barrett’s prior conduct against his present ability to pay back the debt and found Barrett is now employed in a fairly stable job at a substantial income sufficient to insure eventual repayment of the entire debt. The bankruptcy court considered as well Barrett’s offer to reaffirm his personal liability under the mortgage.
For these reasons, we affirm.

. The parties stipulated that the Barretts' actual income for 1985 through 1988 was as follows:
1985 $ 7,630.00
1986 $ 3,777.00
1987 $ 5,700.00
1988 $43,000.00
At the time of the January 1987 and September 1987 bankruptcy filings, Barrett projected a net family income of $26,400.00 per year. At the time of the 1987 filings, Barrett had no immediate expectation of significant future employment. Consequently, the projected figures for 1987 can best be characterized as extremely optimistic. In 1988, Barrett began employment as the Director of Criminal Division of the Clerk of Cleveland Municipal Court, which dramatically increased his income for that year.