In re Nan Beth ALT, Debtor.

Nan Beth Alt, Appellant,

v.

United States of America, Appellee.

Bankruptcy No. SG–97–07803.
Civ. No. 1:99–CV–603.

United States District Court,
W.D. Michigan,
Southern Division.

May 19, 2000.

Nan Beth Alt, Grandville, MI, pro se.

Anita G. McIntyre, Grosse Pointe Park, MI, for Nan Beth Alt.

Agnes M. Kempker–Cloyd, U.S. Attorney's Office, Grand Rapids, MI, John A. Lindquist, U.S. Department of Justice, Tax Division, Washington, DC, for Department of Justice and USA.

## OPINION AND ORDER AFFIRMING DECISION OF THE BANKRUPTCY COURT

MILES, Senior District Judge.

This matter is before the court on the appeal of debtor Nan Beth Alt from a decision of the United States Bankruptcy Court (the Honorable Jo Ann C. Stevenson) dismissing the debtor's Chapter 13 petition. For the reasons set forth below, the court AFFIRMS the decision of the bankruptcy court.

### I

This case arises from a voluntary Chapter 13 bankruptcy petition filed by the debtor-appellant Nan Beth Alt on September 11, 1997. On April 7, 1999, the United States filed a motion to dismiss the petition on the ground that Alt failed to qualify for relief under 11 U.S.C. § 109(e) because (1) she did not have regular income, and (2) on the date of the filing Alt had noncontingent, liquidated, unsecured debt in excess of $250,000. The bankruptcy court heard oral argument on the motion on May 20, 1999, ruling, at the conclusion of the hearing, that it would grant the motion. The bankruptcy court issued its written Order of Dismissal on June 16, 1999.

Alt's appeal is based principally on her argument that the bankruptcy court erred in concluding that her debt exceeded the $250,000 limit for Chapter 13 cases. Alt also argues that the bankruptcy court erred in finding that Alt's petition was not filed in good faith. Key in the bankruptcy court's holding were (1) Alt's failure to schedule a debt owed to the Internal Revenue Service ("IRS") which far exceeded the dollar limit, and (2) Alt's giving of deposition testimony which included answers "laughable at best, fraudulent and criminal at worst[.]" Tr. at 13–14.

Alt is a licensed psychiatrist practicing in Grandville, Michigan. She traces the source of her problems to an unfortunate decision to entrust her sister, Karen Alt ("Karen"), with the task of preparing Alt's taxes. Alt, who describes Karen as "mentally ill," contends that her family began a series of misadventures involving the IRS in 1981, when Karen graduated from law school. Karen, who was apparently never admitted to practice law, decided upon her graduation to establish a "financial management" business, despite having little knowledge of tax laws. Karen's main client was her father, Dr. William Alt.

According to Alt, Karen's "financial management" was a disaster for the family. In April 1990, both William and Karen Alt were indicted by a federal grand jury on five counts of federal tax violations. Although both received convictions, these convictions were overturned on appeal based on the giving of erroneous jury instructions. *United States of America v.*

*Alt,* 996 F.2d 827 (6th Cir.1993). Alt contends that these problems had not yet surfaced at the time she began her psychiatry practice and made the decision to allow Karen to prepare her taxes. She further contends that since 1991, she has hired "licensed professionals" to prepare her taxes.

Although it is unclear precisely when Alt and/or her professional corporation first came to the attention of the IRS, her problems appear to have come to a head in 1996, when, she contends, the IRS "without warning" levied on her professional corporation's bank account. Brief on Appeal at 4. Fearing that continued levy would "put her out of business," *id.,* Alt elected to file a Chapter 13 bankruptcy petition. According to Alt, she filed her first petition on February 11, 1997; however, she contends, the Chapter 13 trustee dismissed the case on June 12, 1997, after Alt and her counsel failed to appear at the confirmation hearing. Alt states that her counsel filed a motion to reinstate the case, which was denied by the bankruptcy court on August 27, 1997.

Meanwhile, on June 30, 1997, the IRS issued a Notice of Deficiency, indicating that it had determined that Alt owed additional taxes and penalties for the years 1986 through 1989 totaling approximately $300,000. When Alt filed the current Chapter 13 proceeding on September 11, 1997, she neglected to list this Notice of Deficiency, and the amounts contained therein, in her schedules filed with the petition. Instead, on her Schedule F— Creditors Holding Unsecured Nonpriority Claims. Alt listed an undated "Assessment" owed to the IRS in the amount of $133,000.

On March 12, 1999, the United States took a Rule 2004 deposition of Alt in order to verify her representation of her financial condition and whether she has regular income. During her deposition, Alt testified, among other things: (1) that she did not know her current address. Alt. Dep. Tr. at 2; (2) that she did not know the telephone number at her residence, *id.* at

4–5; (3) that she maintained a personal checking account with her sister Gretchen as co-signer, but she did not know at which bank, *id.* at 15; (4) that she did not know her sister Gretchen's street address, *id.* at 7; (5) that she never had any cash on her person, *id.* at 16; (6) that she did not know where her checkbook was kept, *id.* at 17; (7) that she did not know how her professional corporation received payment for her services, *id.* at 23; (8) that only three other persons, including her mother Rosalind Alt, her sister Gretchen, and Gretchen's husband, Matthew, worked for her professional corporation, but with the exception of her mother she did not know what specific services they provide for the corporation, *id.* at 23–25; (9) that she did not know who hired these individuals, *id.* at 34; (10) that she did not know whether she had any ownership interest in the professional corporation, *id.* at 24; and (11) that she did not know how much money she was paid by the professional corporation in 1997, *id.* at 35. Not long after Alt's performance at this deposition, the United States filed its motion which resulted in the dismissal of the Chapter 13 proceeding.

## II

This court reviews the bankruptcy court's findings of fact for clear error, and its conclusions of law *de novo. In re Baker & Getty Financial Serv., Inc.,* 106 F.3d 1255, 1259 (6th Cir.1997). The Sixth Circuit has expressly held that the bankruptcy court's good faith determination based on the totality of the circumstances is a finding of fact which must be reviewed under the clearly erroneous standard. *In re Barrett,* 964 F.2d 588, 591 (6th Cir. 1992). In its review of the bankruptcy court's decision, this court may consider any issue presented by the record even if the issue was not presented to the bankruptcy court. *Matter of Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1379 (9th Cir.1985).

Title 11 U.S.C. § 109(e) provides as follows:

> Only an individual with regular income that owes, on the date of the filing

of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000 may be a debtor under chapter 13 of this title.

While acknowledging the requirement of § 109(e), Alt nonetheless argues that the tax debt listed in her schedules—$133,000—should be controlling for purposes of the statute. In support of her position, Alt relies on *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 757 (6th Cir.1985), in which the court held that "Chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith."

Alt argues that neither she nor her attorney remembered receiving the Notice of Deficiency (which she calls the "phantom letter"). During the hearing on the United States' motion, Alt's counsel did state that he did not believe he had seen the document; from this, Alt argues, the bankruptcy court drew the unjustified conclusion that counsel did not remember receiving it because Alt did not give it to him. Alt argues that this inference was not justified because, given the time which had lapsed since the date of the Notice of Deficiency, it was possible that counsel simply did not remember receiving it, or, alternatively, that Alt herself never received it. Alt further argues that the bankruptcy court denied her the opportunity to present evidence regarding her diligence in providing her counsel with all correspondence which she had received from the IRS.

■ Alt's argument might have some merit—were it not for her shameful (or, to borrow an adjective used by the bankruptcy court "shocking") performance at her deposition. Given the bankruptcy court's rather harsh assessment of Alt's performance under oath at her deposition, it can safely be said that the court found that Alt was not a credible witness.[1] Although Alt now attempts to explain away her testimony, arguing that she "became flustered" (Brief on Appeal at 15), that her attorney did not adequately prepare her (*id.* at 6), and that she was put "on the defensive" by the United States' counsel's "hostile demeanor" (*id.*), these arguments are too little, too late. Another assertion by Alt— that "[a]ll of the questions seemed to relate to the location of her family's assets" and that the deposition was a mere "fishing expedition" to support the IRS' collection efforts against Alt's father (Brief on Appeal at 6)—is belied by the transcript. In summary, the bankruptcy court's finding that Alt had not been "honest, forthcoming, truthful, and frank," Tr. at 14, and that her petition should be dismissed based on bad faith, was not clearly erroneous.

■ Alt also argues that even assuming that she had received the Notice of Deficiency at the time she filed her petition in September, 1997, she was justified in excluding the debt from her schedule because the notice was sent while the automatic stay in her first case was "arguably still in effect" (Brief on Appeal at 11) insofar as her motion to reinstate the case had not yet been denied. However, even if this were true, that the Notice of Deficiency was somehow invalid does not excuse Alt's conduct. According to exhibits which the United States presented in support of its motion to dismiss below. Alt's accountants had good reason to believe, at least a year before the Notice of Deficiency was

1. In her reply brief, Alt contends that the record contains no "sworn testimony" because the hearing conducted by the bankruptcy court was not an evidentiary hearing. Given that the transcript of Alt's deposition reflects that she was "first duly sworn," the court begs to differ with Alt's assertion.

issued, that Alt was facing additional tax liability for the years 1986 through 1989.[2] Indeed, the timing of both Alt's first and second petitions suggests that Alt's principle motive in seeking bankruptcy protection was to thwart payment to one particular creditor: the IRS. That Alt disputed her debt did not render it exempt from scheduling. "A taxpayer's duty to pay taxes derives from statute and arises upon [her] nonpayment of the taxes when due. The obligation to pay is not contingent on any extrinsic event." *In re Mazzeo,* 131 F.3d 295, 303 (2d Cir.1997). The absence of a valid assessment does not make the debtor's obligation contingent. *Id.*

### CONCLUSION

This court hereby AFFIRMS the decision of the bankruptcy court.

**2.** For example, in a July 16, 1996 letter to the IRS, Alt's then-accountant, Earl Gemmen, requested the IRS "assistance in compiling totals for the tax liability" of Alt and her professional corporation. In a follow-up letter to the IRS dated July 26, 1996, Gemmen indicated that he had received the IRS letter informing him of the approximate balances due; however, he requested that the IRS provide him the calculations of interest that would be due, or at least the effective, interest rates.