*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0343P (6th Cir.)
File Name: 02a0343p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

In re: NAN BETH ALT,
> *Debtor.*

———————————

NAN BETH ALT,
> *Appellant,*

*v.*

UNITED STATES OF AMERICA,
> *Appellee.*

No. 00-1708

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00603—Wendell A. Miles, District Judge.

Argued: June 13, 2002

Decided and Filed: October 2, 2002

Before: DAUGHTREY and CLAY, Circuit Judges;
WILLIAMS, District Judge.[*]

———————————

[*]The Honorable Glen M. Williams, United States District Judge for the Western District of Virginia, sitting by designation.

1

---

**COUNSEL**

**ARGUED:**    Anita G. McIntyre, Grosse Pointe Park, Michigan, for Appellant.  Marion E.M. Erickson, UNITED STATES DEPARTMENT OF JUSTICE, APPELLATE SECTION TAX DIVISION, Washington, D.C., for Appellee.
**ON BRIEF:**    Anita G. McIntyre, Grosse Pointe Park, Michigan, for Appellant.  Marion E.M. Erickson, David English Carmack, UNITED STATES DEPARTMENT OF JUSTICE, APPELLATE SECTION TAX DIVISION, Washington, D.C., for Appellee.

---

**OPINION**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge.  The debtor, Nan Beth Alt, appeals from an order of the district court  affirming the bankruptcy court's dismissal of her bankruptcy petition on the grounds that she is ineligible for Chapter 13 relief because the amount of her liquidated, non-contingent, unsecured debt exceeded the statutory limit, and because the record showed that her petition was not brought in good faith.  The district court sustained the bankruptcy court's decision, focusing principally on the issue of good faith.  Alt challenges both aspects of the bankruptcy court's ruling.  We find no error and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Nan Beth Alt is a licensed psychiatrist practicing in Michigan.  For the past several years, Alt and members of her family have had a very contentious relationship with the Internal Revenue Service. In 1991, Alt's father, Dr. William Alt, and her sister, Karen Alt, were convicted by a jury of various federal income tax offenses.  On direct appeal, this court reversed their convictions based upon an improper jury instruction and remanded the case for a new trial. *See United*

*States v. Alt*, 996 F.2d 827 (6th Cir. 1993). Upon remand, William Alt pleaded guilty to a misdemeanor and was sentenced to time served. *See United States v. Alt*, 83 F.3d 779, 780 (6th Cir. 1996). During the pendency of the appeal, the government sued William Alt and other members of the Alt family in a civil action to collect back taxes arising from 1981 through 1989, along with interest and penalties. The district court's judgment requiring William Alt to pay $5,053,042.08 was affirmed by this court on appeal. *Alt*, 83 F.3d at 782-84.

The IRS asserts that Nan Beth Alt failed to file federal income tax returns for the years 1986 and 1987.[1] Moreover, IRS audits for the years 1984 and 1985 resulted in a combined tax deficiency for Alt in the amount of $22,596. The IRS also audited Alt for the years 1986 through 1989. Initially, the audits for these years were assigned to the IRS's criminal investigation division for criminal fraud, but they were later returned to the division for civil fraud.

In May 1996, Alt assigned her accountant, Earl Gemmen, to represent her before the IRS with respect to her tax liabilities for the years 1985 through 1996. In July 1996, Gemmen sent a letter to the local IRS office seeking "assistance in compiling totals for the tax liability" of Nan Alt and Alt's personal services corporation. Specifically, Gemmen wanted to know "as quickly as possible" the amount of Alt's "entire liability." One week later, an IRS revenue agent sent Gemmen copies of reports relating to Alt's liability, not including interest, that the IRS represented would give Gemmen "a reasonable figure to work with." Gemmen followed up on the IRS's letter by asking for "the interest calculations," or at least "the effective interest rates."

In June 1997, the IRS sent Alt a statutory notice of deficiency in the amount of $305,086 for the years 1986 through 1989. Several months before the issuance of that

---

[1] Alt testified at deposition that she did not "really recall" whether she filed a federal income tax return for 1986.

notice of deficiency, Alt had filed her initial petition for Chapter 13 relief in bankruptcy court. However, the bankruptcy court dismissed that petition when Alt's lawyer failed to appear at the scheduled confirmation hearing, and the petition had to be refiled after the deficiency notice was issued. In listing creditors holding unsecured, non-priority claims in the second petition, Alt indicated that the IRS had a claim arising from a tax assessment in the amount of $133,000. Alt did not indicate the taxable year or years to which this assessment related. She also listed two different law firms as holding unsecured non-priority claims for attorneys fees in the total amount of $15,000, and a $1 tax debt to the State of Michigan. Alt listed no other creditors.

In November 1997, the IRS filed a proof of claim in Alt's bankruptcy case, listing a secured claim for $104,735.76, an unsecured priority claim of $887.46, and an unsecured general claim for $4.34. The IRS's claim covered civil penalties from 1988 and 1989, as well as income tax liability for 1985 and 1991. It did not include tax liabilities arising from the years 1986 through 1989, even though it had less than five months before issued a notice of deficiency for amounts due from those years.

In March 1999, the government took Alt's deposition pursuant to Federal Rule of Bankruptcy Procedure 2004. Alt's performance in the deposition was remarkable; beyond providing her full name at the outset of the deposition, she was either unable or unwilling to be responsive to the most basic questions posed by the government. For example, Alt stated that she was unaware of her street address and could not remember when she moved to her current residence. When asked for her telephone number, Alt stated, "I can't tell you that one -- that either. I don't receive any calls there, as a rule."

Further, even though Alt had -- less than one year before the deposition -- signed, as *president,* the 1997 corporate income tax return of Clinical Psychiatric Medicine, P.C., her deposition testimony demonstrated an incredible lack of

out, Chapter 13 relief is reserved for the "honest but unfortunate debtor." The court's conclusion that Alt's conduct demonstrated that she did not qualify as an "honest, forthcoming, truthful and frank" debtor is supported by the record and is subject to great deference on our part. Accordingly, we AFFIRM that court's order dismissing Alt's petition as lacking in good faith. It thus becomes unnecessary for us to deal at length with the bankruptcy court's additional ruling that Alt did not meet the eligibility requirements of § 109(e) in this case.

petition in bad faith. However, the bankruptcy court noted after commenting upon Alt's deposition performance that "bankruptcy is not a haven for tax protestors." Indeed, many published cases regarding dismissal of Chapter 13 petitions for bad faith involve tax protestors. *See*, *e.g.*, *In re Burrell*, 186 B.R. 230, 236 (Bankr. E.D. Tenn. 1995) (dismissing Chapter 13 petition as having been filed in bad faith in an effort to further debtor's tax protest); *see also* 4 Lundin, *supra*, at §334.1.

Alt vigorously disputes the court's characterization of her as a tax protestor. Rather, she contends, she is a victim both of IRS harassment and innocent, good faith reliance upon her "mentally ill" sister. Further, in her brief, Alt explains her deposition performance upon her inexperience as a witness, claiming she became "confused and flustered" by her "hostile" interrogator, who was apparently the same "prosecutor who had sent her father and sister to prison." This explanation, however, is neither supported by an affidavit from Alt, nor was it offered to the bankruptcy court in connection with the motion to dismiss. Although Alt may not be a "tax protestor" as that phrase is normally understood, that does not overcome the strong inference of bad faith and abuse of the bankruptcy process raised by her deposition performance and failure to schedule her tax debt.

A lower court's finding of fact "will only be clearly erroneous when, although there may be some evidence to support the finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)). Upon review of the totality of the circumstances in this record, we simply cannot say that the bankruptcy court's finding of bad faith was clearly erroneous.

### CONCLUSION

We recognize that the dismissal of a Chapter 13 petition is a harsh measure. However, as the bankruptcy court pointed

knowledge about the company. Alt testified that she "d[id] not know how many employees" the company had, but that she "believe[d]" that four people worked there: Alt's sister Gretchen, brother-in-law, mother, and Alt herself. When asked what services Gretchen performed for the company, Alt responded, "Oh, I couldn't tell you." Alt claimed not to know who owned the stock of the corporation or whether she had any ownership interest in it. Both Alt's attorney and her accountant were present during her deposition testimony.

Within a few weeks of the deposition, the government moved to dismiss Alt's Chapter 13 petition, attaching, among other exhibits, the transcript of Alt's deposition. The government argued that Alt did not qualify for Chapter 13 relief under 11 U.S.C. § 109(e) because: (1) she lacked "regular income," and (2) as of the date she filed her petition, she owed to the IRS "noncontingent, liquidated, unsecured debts" greater than $250,000. The government argued that it was impossible to verify whether Alt had regular income because of her stone-walling during the deposition. With respect to the $250,000 non-contingent, liquidated, unsecured debt ceiling, the government represented that it had mailed Alt a notice of deficiency for the years 1986-1989 in the amount of $293,134 on June 30, 1997. This tax debt was not reflected in Alt's second petition. Finally, the government requested that "[i]nsofar as the debtor's petition was not in good faith," it should "be dismissed outright, without any option for conversion" to a Chapter 11 petition.

In her short written response, Alt asked the court to deny the motion to dismiss on the grounds that the IRS had filed a proof of claim in the much smaller total amount of $105,627.56, and that the deadline to file claims in her case had long passed. According to Alt, the IRS should be "barred from alleging its claim is not as filed." Alternatively, Alt argued that, should the court find her ineligible under Chapter 13, she be allowed to convert her petition to Chapter 11.

At a later hearing on the government's motion to dismiss, Alt's attorney told the bankruptcy judge that, at the time Alt

filed her petition, "[W]e – and I believed in good faith that the amount of the IRS debt was within the jurisdictional limits of Chapter 13 and, in fact, the IRS filed a claim in the amount of $105,000." In support of his assertion that Alt was proceeding in good faith, the lawyer represented that Alt had been making her payments consistently to the trustee. Further, he said that he "d[id] not believe he [ever] saw" the June 1997 notice of deficiency sent to Alt.

The bankruptcy court noted that it had reviewed Alt's deposition and "was shocked." Counsel for the bankruptcy trustee agreed with the court's assessment of Alt's performance and noted further that the questions asked at deposition had still not been answered satisfactorily. The bankruptcy judge decided in open court that Alt's petition should be dismissed:

> Case dismissed. What the court has seen in this case is shocking. Here is an educated person who apparently for some reason chose to seek bankruptcy counsel without bringing to his attention the fact that a letter had been received from the IRS setting forth the amount of taxes which were owed which were clearly over the jurisdictional limit at the time. Then coming into the bankruptcy the debtor takes a -- submits to a deposition in which the answers are laughable at best, fraudulent and criminal at worst, indicating information that is not available to her. She doesn't know her address, her phone number, where she lives, has never seen any checks being written. This is shocking -- and you may use my words -- shocking. This is not what bankruptcy is all about.

> If the debtor has a dispute with the IRS then the dispute has to be met head-on, honestly and fairly. We do not -- bankruptcy is not a haven for tax protestors, it is for the honest but unfortunate debtor. . . . [E]verything this court has seen, including these adjournments to attempt to resolve this, just are unfortunate.

> Q: Where do you -- where are the checks kept?

> A: In the checkbook. I mean, I don't --

> Q: Where is the checkbook kept?

> A: I don't know exactly where it is kept, actually.

> Q: Do you have more than one checkbook?

> A: Not to the best of my knowledge, no.

> Q: Is it kept anywhere within your residence?

> A: I don't know where it is kept, no.

As the bankruptcy court noted in dismissing Alt's case, Chapter 13 requires the debtor "to be honest, forthcoming, truthful, and frank." Whether the debtor has been forthcoming with the bankruptcy court and the creditors is properly considered in deciding whether dismissal for lack of good faith is appropriate. *See Love*, 957 F.2d at 1357. Here, the bankruptcy court found Alt's deposition performance to be "laughable at best, fraudulent and criminal at worst."

Obviously, Alt's failure to schedule the tax debt set forth in the June 1997 notice of deficiency bolsters the bankruptcy court's finding of bad faith. The court concluded that Alt was aware of this tax debt, which put her "clearly over the jurisdictional limit at the time" under 11 U.S.C. § 109(e) and simply chose to ignore it when completing her schedules. At the hearing, counsel for the trustee expressed concern that Alt's plan, including the omitted claim, would "far exceed 60 months" and was "not confirmable" under § 109(e).

Another factor bankruptcy courts may consider in this context is "how the debt arose." *See Love*, 957 F.2d at 1357. *See also Barrett*, 964 F.2d at 592 (listing "circumstances under which the debt was incurred" as a factor). Here, the debt at issue is an enormous federal income tax deficiency. Certainly not every debtor with substantial tax debt brings his

\* \* \* \* \*

Q: Do you ever go to the bank and cash a check?

A: No.

Q: Do you ever go to a money machine and withdraw funds?

A: No.

Q: How is it that you get the cash that you have on your person at any time?

A: I don't have any cash on my person.

Q: Do you ever have any cash on your person?

A: Unh-uh (negative).

Q: What do you use to purchase food?

A: Check.

Q: And is that a check that you, then write?

A: Sometimes, yes.

Q: So do you have a checkbook in your -- with you today?

A: No.

Q: Do you use credit cards?

A: No.

Q: So the only form of currency that you use is a check?

A: (Nodding head in affirmative.)

\* \* \* \* \*

Now the court is aware that the debtor has made payments to the trustee, but making payments to the trustee under Chapter 13 is only one of the requirements. The other requirement is that the debtor has to submit, has to answer questions, has to be honest, forthcoming, truthful, and frank. And that has not happened in this case. It is not to be tolerated. We are not to set an example by allowing this.

Following the hearing, the court entered a written order stating that, "for good cause shown, the debtor's petition under Chapter 13 is dismissed for bad faith and lack of jurisdiction under 11 U.S.C. § 109(e)."

After getting a new lawyer, Alt appealed the dismissal order to the district court, asserting that she was a victim of IRS harassment and blaming her tax problems on her "mentally ill" sister, Karen Alt, with whom, she said, she had entrusted her finances. She argued that the bankruptcy court had erred in dismissing her petition because it had been filed in good faith. In making this argument, Alt claimed that neither she nor her lawyer remembered seeing the IRS's June 1997 notice of deficiency prior to filing her petition. Alt further argued that, as a legal matter, the debt set forth in that deficiency should not be included in determining her eligibility.

The district court affirmed the bankruptcy court, finding that in view of Alt's "shameful . . . performance at her deposition, it was not clearly erroneous for the bankruptcy court to find that Alt's petition should be dismissed based on bad faith." The district court also rejected Alt's argument that the 1986-1989 tax deficiency should not be counted toward the Chapter 13 debt ceiling. Among other reasons for its conclusion, the district court found that even if Alt never received the June 1997 notice of deficiency, the record showed that she "had good reason to believe, at least a year before the [n]otice of [d]eficiency was issued, that [she] was facing additional tax liability for the years 1986 through 1989."

Alt appeals, raising before this court substantially the same arguments she made before the district court.

## DISCUSSION

On appeal, we review the decision of the bankruptcy court directly. *See Barlow v. M.J. Waterman & Assoc., Inc. (In re M.J. Waterman & Assoc., Inc.)*, 227 F.3d 604, 607 (6th Cir. 2000). The bankruptcy court's conclusions of law are reviewed *de novo*, and its factual findings are reviewed for clear error. *See id.*

The bankruptcy court's order dismissing Alt's petition rests on two independent grounds: that Alt was ineligible for Chapter 13 relief under 11 U.S.C. § 109(e) and that her petition was filed in bad faith. Alt challenges both grounds on appeal. We find no reason to disturb the bankruptcy court's order on either basis. Specifically, we conclude that the bankruptcy judge's legal analysis was sound, but even if the order of dismissal could not be sustained on the basis of its legal analysis, we would still find it necessary to affirm the bankruptcy court on the finding that Alt's petition was filed in bad faith.

Despite the fact that there are no such reported decisions in this circuit, there is abundant authority for the notion that a bankruptcy court has the power to dismiss a Chapter 13 petition upon a finding that the debtor did not bring it in good faith. *See, e.g.*, *In re Banks*, 267 F.3d 875, 876 (8th Cir. 2001); *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996); *Eisen v. Curry (In re Eisen)*, 14 F.3d 469 (9th Cir. 1994); *Gier v. Farmers State Bank of Lucas (In re Gier)*, 986 F.2d 1326, 1329 (10th Cir. 1993); *In re Love*, 957 F.2d 1350 (7th Cir. 1992). Most courts ascribe the basis for such a dismissal to 11 U.S.C. §1307(c), which -- although it does not expressly address good faith -- permits a bankruptcy court to dismiss a

A:  I do not recall.

* * * * *

Q:  What personal property do you have?  What cash do you have presently?

A:  None.

Q:  You have no cash presently?

A:  (Shaking head negatively.)

Q:  Do you have any checking accounts?

A:  Yes.

Q:  Are they in your name?

A:  I have a personal checking account in my name, with my sister as the co-signer.

Q:  Which sister would that be?

A:  That would be Gretchen.

Q:  And where is that kept?

A:  What do you mean?

Q:  Which bank?

A:  I do not know the bank.

Q:  Can you withdraw funds out of that with only your signature, or does it require two signatures?

A:  I do not know.

Q:  Do you ever withdraw funds out of that account?

A:  I don't know what you mean exactly.

recognizes that "the bankruptcy court should be more reluctant to dismiss a petition under Section 1307(c) for lack of good faith than to reject a plan for lack of good faith under Section 1325(a)." *Id.* at 1356.

In the context of section 1307(c), the burden of showing the debtor's lack of good faith is borne by the party seeking dismissal. *See Love* 957 F.2d at 1335. Because the inquiry is one of fact rather than legal analysis, we review the bankruptcy court's finding of bad faith for clear error. *See Barrett*, 964 F.2d at 591; *see also Eisen*,14 F.3d at 470. In doing so, we must give "great deference to the bankruptcy court, the trier of fact." *Love*, 957 F.2d at 1354. *Compare Okoreeh-Baah*, 836 F.2d at 1033 (holding that deciding whether a Chapter 13 *plan* has been proposed in good faith "should be left to the bankruptcy court's common sense and judgment").

Here, the bankruptcy judge's remarks at the hearing on the government's motion to dismiss make it plain that this finding was based in large part on Alt's performance at her deposition. In response to proper questioning regarding her financial condition, Alt claimed not to know how many hours she worked, the rate at which she was paid, or how much money she was paid by her employer, Clinical Psychiatric Medicine, in a given year. The following exchange between Alt and the lawyer for the Department of Justice shows what the bankruptcy court had in mind:

Q:  Where did you keep your financial information with respect to your 1991 work?

A:  I do not keep it.  I don't know what you're referring to.

Q:  Who maintained your records in 1991?

A:  I do not recall.

Q:  Did anyone maintain your records in 1991?

Chapter 13 petition "for cause."[2]   *See* 1 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 5-2 (3d ed. 2000). ("Although not mentioned in the Code as a condition for eligibility for Chapter 13, many reported decisions have considered a debtor's 'good faith' at the threshold of a Chapter 13 case, typically in the context of a motion to dismiss, as if good faith

---

[2]Section 1307 is entitled, "Conversion or dismissal." and provides at subsection (c) in part that,

> [A]fter notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, *including* --
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees and charges required under chapter 123 of title 28;
> (3) failure to file a plan timely under section 1321 of this title;
> (4) failure to commence making timely payments under section 1326 of this title;
> (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;
> (6) material default by the debtor with respect to a term of a confirmed plan;
> (7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;
> (8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;
> (9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521; or
> (10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521.

11 U.S.C. § 1307 (emphasis added).  The fact that the statute uses the word "including" demonstrates that the factors listed are not exclusive. *See Lilley*, 91 F.3d at 494.

were a predicate to Chapter 13 relief."); *id.* at §334.1 (noting that bad faith "is the most often cited basis for dismissal" under section 1307(c)). The key inquiry in such cases is whether the debtor is seeking to abuse the bankruptcy process.

Even though we have not spoken to the subject of what constitutes *bad faith*, we have announced standards for bankruptcy courts to follow in determining the debtor's *good faith*. As a starting point, the bankruptcy code requires that, in order to be confirmed, a debtor's plan must, among other things, be "proposed in good faith." 11 U.S.C. §1325(a)(3). In that context, "[o]ur circuit's good faith test requires consideration of the totality of circumstances." *Society Nat'l Bank v. Barrett (In re Barrett)*, 964 F.2d 588, 591 (6th Cir. 1992) (citations omitted). Among the circumstances to be considered in determining whether a plan has been proposed in good faith are the following:

(1) the debtor's income;

(2) the debtor's living expenses;

(3) the debtor's attorney's fees;

(4) the expected duration of the Chapter 13 plan;

(5) the sincerity with which the debtor has petitioned for relief under Chapter 13;

(6) the debtor's potential for future earning;

(7) any special circumstances, such as unusually high medical expenses;

(8) the frequency with which the debtor has sought relief before in bankruptcy;

(9) the circumstances under which the debt was incurred;

(10) the amount of payment offered by debtor as indicative of the debtor's sincerity to repay the debt;

(11) the burden which administration would place on the trustee;

(12) the statutorily-mandated policy that bankruptcy provisions be construed liberally in favor of the debtor.

*See id.* at 592. We have also emphasized that good faith is a fact-specific and flexible determination. *See Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1032-33 (6th Cir. 1988).

In considering whether a petition has been brought in good faith, other circuits have recognized factors similar to those relevant in determining whether a plan has been proposed in good faith. *See, e.g., Love*, 957 F.2d at 1357 (noting that "the same policy" of protecting against an abuse of the provisions and spirit of Chapter 13 "embodies the two good faith evaluations"); *see also Eisen*, 14 F.3d at 470 ("To determine if a petition has been filed in bad faith courts are guided by the standards used to evaluate whether a plan has been proposed in good faith.") In *Love*, the Seventh Circuit adopted a "totality of the circumstances" test for determining whether a Chapter 13 petition was filed in good faith and set forth a "nonexhaustive" list of factors, which include "the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." 957 F.2d at 1357. *See also Lilley*, 91 F.3d at 496 (adopting totality-of-circumstances test); *Eisen*, 14 F.3d at 470 ("To determine bad faith a bankruptcy judge must review the totality of the circumstances.") (internal quotations omitted). Where present, the factors set forth by this court in the plan confirmation context are properly considered as well. As the Seventh Circuit has noted, "[T]here will often be substantial overlap between the two inquiries." *Love*, 957 F.2d at 1360. However, given the more severe consequences, the law also