In re Michael GRISCHKAN, Debtor.

No. 04–22330.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Jan. 26, 2005.

Charles J. Van Ness, Mayfield Heights, OH, for Debtor.

Beth Ann Schenz, Cleveland, OH, for Mortgage Electronic Registration Systems, Inc.

### MEMORANDUM OF OPINION

PAT E. MORGENSTERN–CLARREN, Bankruptcy Judge.

Creditor Mortgage Electronic Registration Systems, Inc. moves to dismiss Michael Grischkan's chapter 13 case with a bar against re-filing on the ground that he filed it in bad faith. The debtor denies this. For the reasons stated below, the motion is granted.

### JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered by the United States District Court for the Northern District of Ohio. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).

### FACTS [1]

On February 19, 1999, Gloria Grischkan-the debtor's wife-signed a note to borrow $265,000.00 to buy a house at 28575 Settlers Lane, Pepper Pike, Ohio. Ms. Grischkan promised to repay the note in monthly installments of $2,493.67. The debtor and Ms. Grischkan gave the lender a mortgage on the house to secure payment of the note. The movant Mortgage Electronic Registration Systems, Inc. is the successor in interest to the original lender (the lender).

---

1. The court held an evidentiary hearing on January 12, 2005. The parties submitted joint stipulations of fact with some stipulated exhibits. In addition, the movant presented its case through the testimony of David Johnson, the cross-examination of the debtor, and additional exhibits. The debtor presented his case through his own testimony and cross-examination of Mr. Johnson.

Gloria Grischkan did not make any payments under the note and the lender filed a state court complaint on the note and to foreclose the mortgage. A sheriff's sale of the house was set for September 10, 2001. The debtor then filed these bankruptcy cases:

*September 6, 2001 case no. 01–18691 (chapter 13)* [2]

This filing stopped the sheriff's sale. *See* 11 U.S.C. § 362(a). When the debtor did not make the required plan payments to the chapter 13 trustee, the trustee moved to dismiss the case for failure to fund. The court granted that motion. The debtor moved to reinstate the case [3] and the court granted that motion. The lender moved for relief from the stay and co-debtor stay to pursue its state court remedies, including continuing with the foreclosure sale, because Gloria Grischkan still had not made any payments on the note. The debtor again fell into default with his trustee payments and the case was dismissed a second time on June 6, 2002. On dismissal, the lender scheduled another sheriff's sale for October 21, 2002.

*August 6, 2002 case no. 02–18538 (chapter 13)*

This case stopped the second sheriff's sale of the house. The case was dismissed for failure to fund, and later reinstated. The lender then obtained relief from stay and from the co-debtor stay to proceed with the state court sale, no payments having been made on the note. The case was dismissed on May 5, 2003 for lack of funding and failure to prosecute. The lender scheduled a third sheriff's sale for July 7, 2003.

*July 2, 2003 case no. 03–18733 (chapter 13 converted to chapter 7)*

This case stopped the third sheriff's sale. The debtor could not propose a feasible plan and he converted the case to chapter 7. The trustee and the lender entered into an agreed order resolving the lender's motion for relief from stay and abandonment. The debtor later moved for relief from that judgment, which motion is pending. The debtor received his chapter 7 discharge on January 6, 2004. This released him from approximately $176,067.82 in unsecured debt. The lender scheduled a fourth sheriff's sale for September 27, 2004.

*September 26, 2004 case no. 04–22330 (chapter 13)*

This case stopped the fourth sheriff's sale. The debtor is current in his payments to the chapter 13 trustee. To date, however, no payments have been made to the lender on the note.

The debtor has filed his schedules and proposed plan. Schedule I states that the debtor has $3,200.00 in gross monthly income and his wife has $2,469.06 in gross monthly income. The debtor testified that his income is substantially higher now than when he filed his schedules. He estimated it to now be about $7,500.00 to $8,000.00. He did not amend his schedules to show this higher income and did not have any documents to support it. The court finds that there was insufficient evidence to show that the debtor's income is markedly

---

**2.** The debtor owned a construction company that filed a chapter 11 case on May 22, 1998. Some creditors in that case also made claims against the debtor, personally. This contributed to the debtor's decision to file his chapter 13 case.

**3.** In this division, the judges permit a debtor to move to reinstate a case within 30 days after dismissal if the debtor has the funds to pay the past due amounts to the trustee and demonstrates a willingness and ability to proceed with the case. If not for this flexibility, the debtor would have had to file yet another bankruptcy case to obtain relief.

higher now than it was at the time he filed his chapter 13 case.

In the debtor's plan, he proposes to pay the lender $98,746.80 in arrearages under the note signed by Gloria Grischkan, a number that he estimates is the amount she owes. The lender's representative testified about the amount owed under the note. The undisputed amounts include the monthly note payments to date (70 payments at $2,493.67=$174,556.90) plus late charges for each month from the date the first payment was due ($7,605.48), for a subtotal of $182,162.38. The evidence as to whether the lender paid real estate taxes and insurance to protect the property was inconclusive, although the debtor acknowledged that he and his wife had not paid real estate taxes "recently." The lender also claims other miscellaneous fees are due.

The debtor owes about $15,000.00 to the IRS. The deadline for filing claims has not expired. The debtor contends that he filed the pending chapter 13 case because he wants to save his house and pay his creditors.

### THE POSITIONS OF THE PARTIES

The lender moves to dismiss this case with sanctions alleging that the debtor filed it in bad faith in light of the multiple filings to stop sheriff's sales and the failure to make any payment to the lender since the inception of the loan almost six years ago. The lender argues further that the chapter 13 plan now proposed by the debtor is not feasible.

The debtor takes the position that his filing was not made in bad faith because he can show two changes in circumstances that justify the filing: his increased monthly income and his reduced unsecured debt resulting from his chapter 7 discharge.

### DISCUSSION

### I. Dismissal under 11 U.S.C. § 1307(c)

Section 1307(c) provides for dismissal of a chapter 13 case for cause. *See* 11 U.S.C. § 1307(c) (providing for conversion or dismissal "based on the best interests of creditors and the estate"). A debtor's lack of good faith is cause to dismiss a case. *See Alt v. United States (In re Alt)*, 305 F.3d 413, 418–19 (6th Cir.2002) (noting there is abundant authority to support dismissing a chapter 13 case that is not filed in good faith under § 1307(c)). "The key inquiry ... is whether the debtor is seeking to abuse the bankruptcy process." *Id.* at 419. "Stated somewhat differently, a Chapter 13 case is illicit if its pendency is fundamentally unfair to creditors in a manner that contravenes the *spirit* of the Code." *Chase Manhattan Mortgage Corp. v. Rodriguez (In re Rodriguez)*, 248 B.R. 16, 19 (Bankr.D.Conn.1999) (emphasis in original). The movant has the burden of proving that the case was not filed in good faith. *See Alt*, 305 F.3d. at 420 (citing *In re Love*, 957 F.2d 1350 (7th Cir.1992)).

The issue of a debtor's good faith in filing a chapter 13 case is fact specific and the totality of the circumstances must be considered. *Id.* at 419–20. Relevant factors include: the debtor's income and expenses; the debtor's attorney's fees; the anticipated duration of the chapter 13 plan; the debtor's sincerity in seeking relief; the debtor's earning potential; any special circumstances, such as unusually high medical expenses; the frequency with which the debtor has sought bankruptcy relief; the circumstances under which the debt was incurred; the amount of payment offered; the burden which administration would place on the trustee; and the statutorily-mandated policy of construing bankruptcy provisions in favor of the debtor. *See In re Alt*, 305 F.3d at 419–20 (citing

*Society Nat'l Bank v. Barrett (In re Barrett),* 964 F.2d 588, 592 (6th Cir.1992) and noting that the factors used to analyze whether a plan has been proposed in good faith are also properly considered on a motion to dismiss for lack of good faith). Additional factors include: the nature of the debt; how the debt arose; the timing of the petition; whether the debt would be dischargeable in chapter 7; the debtor's motive in filing; how the debtor's actions affected creditors; the debtor's treatment of creditors before and after the filing; and whether the debtor has been forthcoming with the court and creditors. *Id.* (citing *In re Love,* 957 F.2d 1350, 1357 (7th Cir.1992)).

■■■ The circumstances of this case show that the debtor did not file it in good faith. Multiple filings and filing on the eve of foreclosure absent a positive change in the debtor's circumstances are probative of bad faith. *See In re Herrera,* 194 B.R. 178, 187 (Bankr.N.D.Ill.1996). The debtor is a serial filer. This is his fourth bankruptcy filing in three years and two of his cases were dismissed and then reinstated. The debtor repeatedly failed to fund his previous cases. The filing of each case was clearly timed to stop scheduled sheriff's sales. Moreover, as discussed below, the improved circumstances which the debtor cites have not changed his behavior in this case.

The debtor's actions have adversely affected the lender. The lender has not received one payment on the 1999 note. Although the debtor's plan provides that the debtor will make current monthly payments outside the plan, the debtor has ignored his own promise to pay. This continues the debtor's abusive conduct toward this creditor, despite the debtor's

claims that his income has more than doubled since the filing and that his chapter 7 discharge makes this case feasible. The debtor's claim that improved circumstances will allow him to complete this case is, therefore, unfounded. The debtor's plan further proposes to pay the mortgage arrearage inside the plan and projects that it will take 59 months to do so. Yet, the $98,746.80 arrearage stated in the plan is inaccurate and vastly understated because the undisputed evidence shows that the actual charges due to the lender under the note total at least $182,162.38. As a consequence, the proposed monthly plan payment of $1,864.39 is grossly insufficient to pay even the arrearage within the 60–month period allowed by the bankruptcy code. The debtor's claim that the arrearage amount included in the plan was "based on what he thought the amount was" is simply not credible.

The debtor's repeated filings have also adversely affected and burdened the chapter 13 trustee who has been required by law to spend time administering each of the cases.

Based on the totality of the circumstances, the debtor did not file this chapter 13 case in good faith and there is cause to dismiss it.

## II. *Sanctions*

■■ The lender asks for sanctions in the form of a bar against refiling.[4] Several bankruptcy code sections provide a basis for this type of sanction. Under § 109(g)(1), the court may impose a 180–day bar against the debtor's re-filing if "the case was dismissed ... for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case[.]" 11

---

4. The lender also requested in rem relief. The court cannot decide that issue, however, because Gloria Grischkan has an interest in the property and she was not served with the motion or given notice of the proceedings.

U.S.C. § 109(g)(1). "Section 109(g) represents Congress's response to the problem created by those debtors who make sequential filings to abuse the Code and creditors." *In re Pike*, 258 B.R. 876, 881 (Bankr.S.D.Ohio 2001). A § 109(g) sanction is warranted when a debtor abuses the bankruptcy process by filing multiple cases in unchanged circumstances. *Id.* at 883. As one court noted:

> ... a court may 'construe repeated failure to appear or lack of diligence as willful conduct. Repeated conduct strengthens the inference that the conduct was deliberate. Additionally, the court will infer from a pattern of dismissals and re-filing in unchanged circumstances willful failure to abide by orders of the court and an abuse of the bankruptcy process which this [provision] was designed to prevent.'

*Walker v. Stanley*, 231 B.R. 343, 348 (N.D.Cal.1999) (quoting *In re Herrera*, 194 B.R. 178, 188 (Bankr.N.D.Ill.1996)).

Additionally, §§ 105(a) and 349(a) give the bankruptcy court authority to prohibit a debtor from making future bankruptcy filings. *See Casse v. Key Bank Nat'l Assoc. (In re Casse)*, 198 F.3d 327, 337–339 (2d Cir.1999) (collecting cases which hold that bankruptcy courts derive the power from §§ 105(a) and 349(a), in an appropriate case, to prohibit a serial filer from filing petitions for periods of time exceeding 180 days.).

■ Section 105(a) states that:

(a) The court may issue any order ... that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Equitable authority under § 105(a) is "constrained to actions or determinations that are 'not inconsistent' with the Bankruptcy Code." *ATD Corp. v. Advantage Packaging, Inc. (In re ATD Corp.)*, 352 F.3d 1062, 1066 (6th Cir. 2003). Bankruptcy courts, however, have broad equitable authority to deal with debtor misconduct. *See Palmer v. United States (In re Palmer)*, 219 F.3d 580, 586 (6th Cir.2000) (acknowledging bankruptcy court authority under § 105(a) to toll the 11 U.S.C. § 508(a)(8)(A)(i) look-back period based on debtor misconduct). Section 105(a) is an appropriate statutory basis for imposing a bar as to a debtor's re-filing to protect the bankruptcy process. *See, for example, In re Casse*, 198 F.3d at 340 (discussing a bankruptcy court's power under § 105(a) to preclude a debtor from future filings to protect the bankruptcy process from abuses); *In re Dilley*, 125 B.R. 189, 196 (Bankr.N.D.Ohio 1991) (citing § 105(a) as a basis for imposing limits on re-filing to prevent abuse of the bankruptcy process). *See also, In re Price*, 304 B.R. 769, 773 (Bankr.N.D.Ohio 2004) (employing § 105(a) to impose in rem relief to prevent abuse of the bankruptcy process).

■ Sanctions against re-filing may also be imposed under bankruptcy code § 349(a) which deals with the effect of case dismissal and provides:

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a). Under § 349(a), the general rule is that a case dismissal is without prejudice. The section does, however, give a court authority to sanction a debtor for cause by imposing a bar against re-filing. *See In re Casse*, 198 F.3d at 336; *Javens v. Ruskin*, 2000 WL 1279189 (E.D.Mich.2000); *In re Price*, 304 B.R. at 772. Cause exists based on a finding of bad faith resulting from a debtor's egregious behavior. *See Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999); *Walker v. Stanley*, 231 B.R. 343, 348 (N.D.Cal.1999).

█ The court will grant the lender's request for a 180–day bar against re-filing. The debtor filed this case in bad faith and he has clearly misused the bankruptcy process. This is his fourth bankruptcy filing in three years. Despite the fact that the debtor and his wife have not made any payments on the house note, the debtor has continually thwarted the lender's legitimate attempts to foreclose through these multiple filings. Although the debtor argues that his circumstances have changed for the better, his treatment of the lender has not changed. Since the filing, the debtor has continued to live in the house without making even one of the current monthly mortgage payments which he himself promised to pay in his plan. The debtor's actions constitute a failure to appear before the court in proper prosecution of the case and merit the imposition of a 180–day bar against re-filing under § 109(g)(1). Additionally, the debtor's filing amounts to an abuse of the bankruptcy process and the imposition of a 180–day bar against re-filing is also appropriate under § 105(a). Finally, the debtor's egregious treatment of the lender and his filing of the present case in bad faith constitutes sufficient cause for the imposition of a 180–day bar against re-filing under § 349(a).

## CONCLUSION

For the reasons stated, the lender's motion to dismiss with a 180–day bar against refiling is granted. A separate order will be entered reflecting this decision.

## ORDER

For the reasons stated in the memorandum of opinion filed this same date, the motion of Mortgage Electronic Registration Systems, Inc. to dismiss this case with sanctions is granted. (Docket 14). This case is dismissed and the debtor Michael Grischkan is barred from filing a petition under any chapter of the United States Bankruptcy Code in any bankruptcy court for a period of 180 days from the date of this order.

IT IS SO ORDERED.